

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-21-2005

# Morgan v. Atty Gen USA

Precedential or Non-Precedential: Precedential

Docket No. 04-3254

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Morgan v. Atty Gen USA" (2005). *2005 Decisions.* Paper 13.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/13

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 04-3254
_____

CARROL MORGAN,
             Petitioner
          vs.

ATTORNEY GENERAL
OF THE UNITED STATES,
             Respondent
_____

ON PETITION FOR REVIEW
OF AN ORDER OF THE BOARD OF
IMMIGRATION APPEALS
(Agency No. A37-332-497)
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
September 29, 2005

Before:  RENDELL, FUENTES and WEIS, Circuit Judges

(Filed:   December 21, 2005)


1

―――――――――

OPINION

―――――――――

WEIS, Circuit Judge.

Petitioner Carrol Morgan is subject to an Order of Removal pursuant to section 237(a)(2)(A)(iii) of the Immigration and Naturalization Act, 8 U.S.C. § 1227(a)(2)(A)(iii), as a resident alien who has been convicted of drug offenses classified as "aggravated" felonies. Petitioner contends that she is not removable because she obtained derivative United States citizenship upon her mother's naturalization while her parents allegedly were separated. Because petitioner cannot establish that her parents were legally separated at the time her mother was naturalized, we will deny the petition for review.

Under former section 321(a) of the Immigration and Naturalization Act, 8 U.S.C. § 1432(a), a child born outside the United States automatically acquires United States citizenship if, while the child is under the age of eighteen, the parent with legal custody of the child is naturalized while that child's parents are legally separated. 8 U.S.C. § 1432(a)(3).

Petitioner was born in Jamaica in 1968. Her parents married in that country in 1974. Four years later, her mother, Verna Mae Morgan, entered the United States as a lawful permanent resident. In 1981, petitioner joined her mother in the

2

United States, also entering as a lawful permanent resident. On July 25, 1984, when petitioner was age sixteen, her mother was naturalized. Her father, Hopeton Morgan, entered the United States on December 23, 1984 and lived with her mother in Philadelphia, Pennsylvania. Neither petitioner nor her father have ever been naturalized.

In April 2003, petitioner was charged with being an alien convicted of an aggravated felony and therefore subject to removal. She applied for withholding of removal, asylum and relief under the Convention Against Torture.

The IJ refused the petitioner's requests for a continuance of the proceedings and, after a hearing, denied asylum, withholding of removal and relief under the Convention Against Torture. The IJ also rejected the petitioner's contention that, because she was born out of wedlock, she was eligible for derivative citizenship under 8 U.S.C. § 1432 upon her mother's naturalization. Petitioner appealed to the Board of Immigration Appeals ("BIA"), again asserting derivative citizenship, but on this occasion she contended that she was eligible because her mother and father were legally separated at the time of the naturalization.

The BIA dismissed petitioner's appeal on July 9, 2004, finding that she had failed to establish derivative citizenship because there was no evidence that the petitioner's mother was ever legally separated from her father. In reaching this conclusion, the Board relied on case law that interpreted the statutory term "legal separation" to mean separation recognized or achieved through judicial proceedings. The Board noted that

3

the petitioner's request for a writ of habeas corpus in the United States District Court for the Eastern District of Pennsylvania, based on the same claim for derivative citizenship, had been denied. See Hurde-Morgan v. Ashcroft, No. 04-cv-936, 2004 WL 1166588 (E.D. Pa. May 24, 2004). The Board also rejected the petitioner's complaint about the IJ's refusals of continuances because the motions lacked sufficient articulation of the facts or evidence that could have demonstrated that actual prejudice or harm resulted from the denials.

In this petition for review, petitioner has abandoned her claims for withholding of removal, asylum and relief under the Convention Against Torture. She argues only that the IJ erred in concluding that she had not obtained derivative citizenship and in denying her motions for continuance of the hearing.

8 U.S.C. § 1252(b)(5)(A) grants us jurisdiction to review a claim of nationality if there is no genuine issue of material fact with respect to that claim. 8 U.S.C. § 1252(a)(2)(C), however, provides in relevant part, that "except as provided in subparagraph (D), no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense . . . covered by section 1227(a)(2)(A)(ii)." Subparagraph (D) provides that we have jurisdiction to consider any constitutional and legal questions that may be presented in this petition for review, notwithstanding anything in subparagraph (C). See 8 U.S.C. § 1252(a)(2)(D).

Though subparagraph (D), as part of the REAL ID Act, did not become law until May 11, 2005, the Act applies

retroactively to any case, "in which the final administrative order of removal, deportation, or exclusion was issued before, on, or after the date of the enactment of this division." REAL ID Act of 2005 § 106(b), Pub.L. No. 109-13, 119 Stat. 231. We have held that the REAL ID Act amendments "restoring our jurisdiction" apply to all "pending or future petitions for direct review challenging final orders of removal, except as may otherwise be provided in § 1252." Papageorgiou v. Gonzales, 413 F.3d 356, 358 (3d Cir. 2005). Thus, we have jurisdiction to consider any constitutional or legal claims that may be presented in this petition for review.

The issue of derivative citizenship is a purely legal issue of statutory interpretation. See Jordon v. Attorney General, 424 F.3d 320, 328 (3d Cir. 2005). We also have jurisdiction to consider the constitutional claim that the IJ violated the petitioner's due process rights. See Papageorgiou, 413 F.3d at 358-59.

The Immigration and Nationality Act confers citizenship on children born outside of the United States to alien parents when certain statutory conditions are met. See Miller v. Albright, 523 U.S. 420, 424 (1998) (citing United States v. Wong Kim Ark, 169 U.S. 649, 702 (1898), for the proposition that persons born outside of the United States may acquire United States citizenship "only as provided by acts of Congress"); Minasyan v. Gonzales, 401 F.3d 1069, 1075 (9th Cir. 2005) ("Since the enactment of the first naturalization statute in 1790, our immigration laws have conferred derivative citizenship on the children of a naturalized citizen, provided certain statutorily prescribed conditions are met.").

5

The law applicable is that in effect at the time the critical events giving rise to the claim for derivative citizenship occurred.  Minasyan, 401 F.3d at 1075.  The relevant times are the date of the child's birth, the time of the child's entry into the United States, and the date of the parent's naturalization.  See Bagot v. Ashcroft, 398 F.3d 252, 257 n.3 (3d Cir. 2005) (listing "relevant times" for derivative citizenship claims).  In this case, 8 U.S.C. § 1432 was in effect when all of the critical events occurred.

In relevant part, § 1432(a) provides that a "child born outside of the United States of alien parents . . . becomes a citizen of the United States upon . . . [t]he naturalization of the parent having legal custody of the child when there has been a legal separation of the parents . . . ."  8 U.S.C. § 1432(a).  The child must also be under eighteen years of age at the time of the parent's naturalization and be residing in the United States as a lawful permanent resident.[1]

---

[1] 8 U.S.C. § 1432 (a) provides:

"A child born outside of the United States of alien parents, or of an alien parent and a citizen parent who has subsequently lost citizenship of the United States, becomes a citizen of the United States upon fulfillment of the following conditions:
(1) The naturalization of both parents; or
(2) The naturalization of the surviving parent if one of the parents is deceased; or
(3) The naturalization of the parent having legal

custody of the child when there has been a legal separation of the parents or the naturalization of the mother if the child was born out of wedlock and the paternity of the child has not been established by legitimation; and if

(4) Such naturalization takes place while such child is under the age of eighteen years; and

(5) Such child is residing in the United States pursuant to a lawful admission for permanent residence at the time of the naturalization of the parent last naturalized under clause (1) of this subsection, or the parent naturalized under clause (2) or (3) of this subsection, or thereafter begins to reside permanently in the United States while under the age of eighteen years."

8 U.S.C. § 1432(a).

On October 30, 2000, Congress repealed § 1432 by enacting the Child Citizenship Act of 2000, Pub. L. No. 106-395, 114 stat. 1631, effective February 27, 2001. Under the new Act all children born outside of the United States automatically obtain United States citizenship when,

"(1) At least one parent of the child is a citizen of the United States, whether by birth or naturalization.

(2) The child is under the age of eighteen years.

(3) The child is residing in the United States in the legal and physical custody of the citizen parent pursuant to a lawful admission for

7

Here, all of the time requirements have been satisfied and no dispute exists about "legal custody" of the child. The sole issue before us is whether the petitioner's mother was "legally separated" from her husband at the time of her naturalization.

In Jordon, we held that derivative citizenship had not been established because the legal separation in that case, a New York divorce, occurred after the naturalization proceeding. Jordon, 424 F.3d at 329-30. Jordon specifically declined to decide the meaning of "legal separation." Id. at 330 n.10.

Although this Court has not yet expressed its views on the meaning of "legal separation," we considered the related concept of "legal custody" in Bagot. There, the panel concluded that in the absence of a judicial decree awarding custody, longstanding BIA precedent defining "legal custody" as "actual uncontested custody" would apply. Bagot, 398 F.3d at 254.

---

permanent residence."
Id. at § 101. The statute no longer includes a reference to legal separation of the parents. The law, however, does not apply retroactively to persons, like petitioner, who turned eighteen before Congress passed the Child Citizenship Act. See Jordon v. Attorney General, 424 F.3d 320, 328 (3d Cir. 2005) ("Because all relevant events respecting [petitioner's] claimed derivative citizenship occurred prior to the [Child Citizenship Act's] effective date, § 1432 controls our analysis.") (citing Bagot v. Ashcroft, 398 F.3d 252, 257 n.3 (3d Cir. 2005)).

8

Bagot, however, clearly stated that "legal separation" was distinguishable from "legal custody" in the derivative citizenship context. See id. at 267. Judge Becker's opinion observed that "there is no inconsistency in requiring a court order for legal separation while allowing legal custody to be based on the consent of the parties or an undisputed physical custody." Id. Judge Rosenn's concurring opinion, joined by Judge Nygaard, agreed: "The opinion of the court also rejects the [r]espondent's argument that 'legal custody' like 'legal separation,' requires a court decree. I fully agree with both propositions." Id. at 270 (internal citations omitted).

Courts of appeals have held that § 1432(a)(3), as part of the INA, is subject to the constitutional requirement of a "uniform Rule of Naturalization" provided for in Article I, section 8 of the Constitution. See, e.g., Brissett v. Ashcroft, 363 F.3d 130, 133-34 (2d Cir. 2004); Nehme v. INS, 252 F.3d 415, 429 (5th Cir. 2001).

The statute, however, does not contain a definition of the term "legal separation." That lacuna has led the courts to inquire to what degree state laws may provide the rule of decision to determine whether a couple is legally separated for purposes of § 1432(a)(3).

In Nehme, the Court held that "in interpreting a federal statutory term, a court may devise a federal rule by reference to state law," but rejected "any contention that the law of any one state should govern the determination whether an alien child's parents were legally separated." 252 F.3d at 423-24. The Nehme Court considered the divorce and separation laws of the

9

fifty states and found that "in the United States, the term 'legal separation' is uniformly understood to mean <u>judicial</u> separation." <u>Id</u>. at 426.

After a review of the legislative history, the Court concluded that Congress intended to grant derivative citizenship only to children whose "real interests" are located in America with custodial parents. <u>Id</u>. at 425. The Court reasoned, "It makes sense . . . that when the child's parents are still married, the child does not *automatically* acquire a new citizenship upon the naturalization of only one parent." <u>Id</u>. The Court thus held that when only one parent has been naturalized, § 1432(a)(3) requires a formal judicial alteration of the marital relationship. <u>Id</u>. at 425-26.

<u>Brissett</u> agreed with <u>Nehme</u> that "naturalization laws must be 'construed according to a federal, rather than state, standard.'" 363 F.3d at 133 (quoting <u>Nehme</u>, 252 F.3d at 422). <u>Brissett</u>, however, took issue with <u>Nehme</u>'s insistence upon a judicial decree as evidence of a legal separation, reasoning that "[n]othing in the language of the statute suggests the requirement of a judicial proceeding." <u>Id</u>. at 135 n.3. <u>Brissett</u> declined to articulate exactly what circumstances would control, but held that at a minimum, "'legal separation' is satisfied only by a formal act which, under the laws of the state or nation having jurisdiction of the marriage, alters the marital relationship either by terminating the marriage (as by divorce) or by mandating or recognizing the separate existence of the marital parties." 363 F.3d at 132.

10

Wedderburn v. INS, 215 F.3d 795 (7th Cir. 2000), adopted the BIA definition of "legal separation": "a limited or absolute divorce obtained through judicial proceedings." Id. at 799 (quoting Matter of H, 3 I&N Dec. 742, 744 (1949)). The Court also stated that "federal law may point to state (or foreign) law as a rule of decision . . . ." Id. With respect to the issue of what law governs, the Court observed that "the INS determines the existence, validity and dissolution of wedlock using the legal rules of the place where the marriage was performed (or dissolved)." Id.

Minasyan also recognized the requirement of uniformity in immigration laws, but commented that where the legal relationship in question is "created by" state or foreign law, a "court must begin its analysis by looking to that law." 401 F.3d at 1076. The Court reasoned that "legal separation" means "a separation recognized by law," and "because there is no federal law of domestic relations, that necessarily means a separation recognized by state law." Id. Therefore, the Court held that the law of the state with jurisdiction over an alien's parents' marriage controls the determination of whether a couple is legally separated. The Court also concluded that because "'legal separation' cannot possibly be limited to orders expressly so titled, . . . it encompasses other forms of court-ordered recognition of the final breakup of a marriage." Id. at 1078. Because there was a court order of separation, the Court declined to consider "whether, in the absence of a judicial order, a complete and final break in a California marital relationship would constitute a legal separation within the meaning of § 321(a)(3)." Id. at 1079 n.19.

11

Thus, every court of appeals that has considered the question has concluded that a "legal separation" requires some formal action. There remains, however, some ambiguity about what form the action must take.

Nehme took a rather restrictive view of the use of state law as a rule of decision. Other case law recognizes that since there is no federal law of domestic relations, state law should be consulted when relevant to determine the meaning of a family law term. De Sylva v. Ballentine, 351 U.S. 570, 580 (1956); Minasyan, 401 F.3d at 1076. The law of a foreign country may be applicable in some instances as an alternate or in addition to state law.

We are persuaded that in this case we should look to the laws of both Jamaica and Pennsylvania, the states with potential jurisdiction over the Morgans' marriage. In the circumstances here, only two governmental entities had the authority to formally modify the petitioner's parents' marital relationship. A general review of the procedures and requirements of various states, as conducted in Nehme, is inadequate because of the lack of focus on the forums that actually possess the power to decree that a separation recognized and enforceable by law has occurred.

As the Supreme Court has recognized, "[t]he scope of a federal right is . . . a federal question, but that does not mean that its content is not to be determined by state, rather than federal law." De Sylva, 351 U.S. at 580. Further, "[T]his is especially true where a statute deals with a familial relationship . . . ." Id. In Brea-Garcia v. INS, 531 F.2d 693 (3d Cir. 1976),

12

we held that the term "adultery"[2] in the Immigration and Naturalization Act derives it meaning from state law, reasoning that "in the absence of a federal definition of adultery, [the provision] must be construed with reference to state civil law." Id. at 695. Further, we concluded that "defer[ring] to the state in which an alien chooses to live" to define adultery is appropriate. Id. at 697-98. Likewise, in the present case, it is appropriate to defer to the jurisdictions with authority over the marriage to determine the meaning of legal separation for purposes of § 1432(a)(3).

At the time the parties were married in 1974, Jamaica had in effect a procedure for obtaining a "decree of judicial separation." See Divorce Act §§ 9-13 (1973) (Jamaica), repealed by Matrimonial Causes Act § 35(1) (1989) (Jamaica). However, in 1989 Jamaica abolished the practice and did not replace it with any similar mechanism. See Matrimonial Causes Act § 35(1). At the time of the petitioner's mother's naturalization in 1984, Jamaica recognized a right to a judicial separation which Jamaican law distinguished from absolute divorce; however, Jamaica required a formal court order to establish a "legal separation" under section 9 of its Divorce Act.

---

[2]We recognize that Congress has repealed the provision of the INA, 8 U.S.C. 1101(f)(2), that provided that adultery was grounds for removal of an alien. See Pub.L. 97-116, § 2(c)(1), Dec. 29, 1981, 95 Stat. 1611. This does not affect our analysis of what law may provide the rule of decision in interpreting a federal statutory term.

13

There is no evidence that any Jamaican court ever issued a decree of judicial separation to the petitioner's parents. In the absence of such a judicial act, there was no "legal separation" under Jamaican law, although the mother had lived apart physically from her husband for four years before naturalization.

During the period between the petitioner's mother's arrival in the United States and her naturalization, Pennsylvania had jurisdiction over the marriage. Pennsylvania courts may issue a decree of divorce "if, at the time the action was filed, [at least one party] had been a 'bona fide resident' of [the] Commonwealth for a period of at least one year . . . . 'Bona fide residence' means domicile; i.e., actual residence coupled with the intention to remain there permanently or indefinitely." Zinn v. Zinn, 475 A.2d 132, 133 (Pa. Super. Ct. 1984) (internal citations omitted). The petitioner's mother, a lawful permanent resident of the United States residing in Philadelphia, was clearly a bona fide resident of Pennsylvania.

A party to a Pennsylvania divorce proceeding need not be a citizen of the United States, nor is it necessary for the marriage to have occurred in the United States. Sinha v. Sinha, 834 A.2d 600 (Pa. Super. Ct. 2003) (holding that Pennsylvania courts had jurisdiction over the dissolution of a marriage that occurred in India between two Indian citizens).

At the time the petitioner's mother came to the United States, a Pennsylvania statute allowed a woman to seek a limited divorce, *a mensa et thoro*, from bed and board. 23 P.S. § 11. That statute was repealed in 1980 and no similar provision was enacted. The petitioner's mother, had not obtained a divorce

under that statute before the naturalization occurred, nor is there any evidence that she ever sought a decree.

The Pennsylvania legislature enacted a "no fault" divorce law in 1980. 23 Pa.C.S. A. § 3301. It provides that a court may grant a divorce when the parties "have lived separate and apart for a period of at least two years" and where the marriage is "irretrievably broken." Id. Separate and apart is defined as "cessation of cohabitation, whether living in the same residence or not." 23 Pa.C.S.A. § 3103. For purposes of the Pennsylvania divorce statute, "Physical separation alone does not satisfy the separate and apart requirement . . . ." Sinha v. Sinha, 526 A.2d 765, 767 (Pa. 1987). An independent intent to dissolve the marital union must be "clearly manifested and communicated to the other spouse." Id.

Relying on the "no fault" statute, petitioner argues that because her parents lived apart for more than two years, they were legally separated under Pennsylvania law. Petitioner, however, has not established that her parents were ever living "separate and apart" because there is no evidence that either party ever communicated to the other party an intention to dissolve the marital union. Further, the petitioner's argument overlooks the requirement that separation in Pennsylvania is recognized only by a divorce secured through a judicial order.

Without the entry of the decree there has been no change in the legal existence of the marriage here. Petitioner has not presented any evidence of a divorce between her parents and

15

therefore her parents were not legally separated under Pennsylvania law at the time of the mother's naturalization.[3]

Petitioner has failed to produce any evidence of a court decree or any other formal government action establishing that her parents were separated by action of law. Therefore, she has not established derivative citizenship. As Brissett observed, "including an informal separation within the provision's terms would effectively eviscerate the force of the term 'legal' from the statute." Brissett, 363 F.3d at 134. Furthermore, the requirement of a formal action of a competent governmental authority provides a certainty that is important to administration of the immigration laws.[4]

---

[3]We need not decide whether a divorce decree within two years following the petitioner's mother's naturalization and effective before the petitioner's 18th birthday might have acted as a *nunc pro tunc* court order establishing a prior legal separation. The record establishes that the petitioner's parents never sought a divorce.

[4]The formal action need not necessarily be a judicial decree. A state or foreign nation, for example, could allow an administrative agency or other governmental body to issue orders of separation. There is nothing in the language of the statute that requires that a court must act for a legal separation to exist.

Conceivably, some jurisdictions might consider parties "legally separated" if they lived apart for a period of time without seeking any governmental imprimatur. We know of no

16

We hold that a legal separation for purposes of § 1432(a) occurs only upon a formal governmental action, such as a decree issued by a court of competent jurisdiction that, under the laws of a state or nation having jurisdiction over the marriage, alters the marital relationship of the parties. In this case, the courts in both Jamaica and Pennsylvania had jurisdiction and neither decreed a separation.

Petitioner also complains that the IJ improperly denied her requests for continuances of her hearing date. Aliens are entitled to due process protection during removal proceedings. Kamara v. Attorney General, 420 F.3d 202, 211 (3d Cir. 2005); Xu Yong Lu v. Ashcroft, 259 F.3d 127, 131 (3d Cir. 2001).

To establish that the IJ violated her due process rights, petitioner must show that the IJ's decision was an abuse of discretion which caused her to suffer actual prejudice. Ponce-Leiva v. Ashcroft, 331 F.3d 369, 374-77 (3d Cir. 2003).

The motions for continuances requested additional time for petitioner to obtain documentation, some of which related to her most recent conviction. Petitioner explained neither the relevance of those documents nor the reason why they could not be obtained within a reasonable time. None of the requests pertained to the alleged legal separation of the petitioner's parents, the legal issue that predominates in this case.

---

jurisdiction that has adopted such a policy and we leave that issue for another day.

17

Petitioner has not demonstrated how any evidence she might have found would have affected the outcome of her case. She did not suffer any actual prejudice as a result of the denials of her requests for continuances and thus there was not a due process violation.

We are not persuaded that the IJ abused her discretion in denying the motions for continuance.

The petition for review will be denied.