

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-8-2006

# De Oca-Montero v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-2609

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"De Oca-Montero v. Atty Gen USA" (2006). *2006 Decisions.* Paper 224.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/224

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

———

No. 05-2609

———

CESAR AUGUST MONTES DE OCA-MONTERO,
                                    Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                    Respondent

———

Petition for Review of the Order
of the Board of Immigration Appeals
(A37-641-578)
Immigration Judge:  Henry S. Dogin

———

Submitted Under Third Circuit LAR 34.1(a)
November 6, 2006

Before: SLOVITER, CHAGARES, and NYGAARD, Circuit Judges

(Filed November 8, 2006)

———

OPINION

SLOVITER, Circuit Judge.

Petitioner Cesar August Montes De Oca-Montero petitions this court for review of a Board of Immigration Appeals ("BIA") decision finding that he failed to establish that he is entitled to derivative citizenship under former § 321(a)(3) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1432(a) (repealed and superseded 2000). Oca-Montero is a native of the Dominican Republic, who was admitted to the United States on December 9, 1982, at the age of ten as a legal permanent resident. He argues that he is a citizen of the United States and that he derived his citizenship from his father, who was his custodial parent after Oca-Montero's parents terminated their common-law marriage.

**I.**

There is no affidavit or testimony of Oca-Montero himself in the record but according to his counsel Oca-Montero's parents had a common-law marriage in the Dominican Republic. He claims that his parents separated while he was young and that he was left in the custody of his father. His mother came to the United States and remarried on April 14, 1981, a fact verified by the record. While Oca-Montero entered the United States in 1982, it is unclear when his father came. Regardless, his father became a naturalized United States citizen on January 16, 1990, while Oca-Montero was seventeen.

Oca-Montero was convicted on February 18, 2000 in the United States District Court for the Eastern District of New York for the offense of conspiracy with intent to distribute 100 grams or more of heroin in violation of 21 U.S.C. §§ 846 and 841(b)(1)(B)

2

(2000) and sentenced to imprisonment for 60 months. On June 3, 2004, he was served with a Notice to Appear, charging that he was removable under INA § 237(a)(2)(B)(i), 8 U.S.C. § 1227(a)(2)(B)(i) (2000), as an alien convicted of a crime relating to a controlled substance and under INA § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii) (2000), as an alien convicted of an aggravated felony, in this case a drug trafficking crime.

At his hearing before an immigration judge ("IJ"), Oca-Montero moved to terminate the removal proceedings, claiming that he acquired derivative citizenship pursuant to former INA § 321(a)(3), 8 U.S.C. § 1432(a), when his father was naturalized on January 16, 1990. Specifically, his claim was based on § 321(a)(3), which provided that where one parent is naturalized, a child can acquire derivative citizenship if the naturalized parent is the "parent having legal custody of the child when there has been a legal separation of the parents."[1] Oca-Montero did not testify or submit affidavits

---

[1] Section 321(a)(3) of the Act provided:

A child born outside of the United States of alien parents . . . becomes a citizen of the United States upon the fulfillment of the following conditions:
. . .

(3) The naturalization of the parent having legal custody of the child when there has been a legal separation of the parents or the naturalization of the mother if the child was born out of wedlock and the paternity of the child has not been established by legitimation; and if

(4) Such naturalization takes place while such child is under the age of eighteen years; and

3

supporting this claim.

The IJ found that Oca-Montero did not acquire United States citizenship under former § 321(a), denied his motion to terminate proceedings, and found him removable as charged. Although the IJ noted that Oca-Montero did not submit any documentary evidence supporting his claim that his father had legal custody or uncontested physical custody of him, he presumed that the father had physical custody, but found no evidence of legal separation of the parents. Therefore, the IJ held that Oca-Montero did not derive citizenship from his father. The BIA dismissed Oca-Montero's appeal, finding that he failed to establish that he is entitled to derivative citizenship under former § 321(a). The BIA held that there was no evidence that Oca-Montero's parents' relationship was brought to a formal end or that they were legally separated. In addition, the BIA held that there was nothing to indicate he lived with his father pursuant to "legal custody."

---

(5)  Such child is residing in the United States pursuant to a lawful admission for permanent residence at the time of the naturalization of the parent naturalized under . . . (3) of this subsection, or thereafter begins to reside permanently in the United States while under the age of eighteen years.

8 U.S.C. § 1432(a) (2000), *repealed by* Child Citizenship Act of 2000, § 103, Pub. L. No. 106-395, 114 Stat. 1631.

Although the statute under which Oca-Montero claims citizenship was repealed and superseded in 2000, the repeal has no bearing on Oca-Montero's claim because he claims to have derived citizenship in 1990, before § 321(a) was repealed. See Jordon v. Att'y Gen., 424 F.3d 320, 328 (3d Cir. 2005).

4

Administrative Record ("A.R.") at 2. Instead, the BIA found that Oca-Montero seemed to live intermittently with both his father and mother.

Oca-Montero filed this timely petition for review.

## II.

### A.

This Court has jurisdiction pursuant to 8 U.S.C. § 1252 to review a final BIA order. Because the BIA provided an independent analysis of the facts, our review is limited to the Board's decision. See Kayembe v. Ashcroft, 334 F.3d 231, 234 (3d Cir. 2003). The issue of derivative citizenship is a purely legal issue of statutory interpretation, Morgan v. Att'y Gen., 432 F.3d 226, 229 (3d Cir. 2005), over which we exercise plenary review. Jordon, 424 F.3d at 328.

Oca-Montero's claim is governed by INA § 242(b)(5), 8 U.S.C. § 1252(b)(5) (2000), which provides:

> (5) Treatment of nationality claims
>
> > (A) Court determination if no issue of fact
> >
> > If the petitioner claims to be a national of the United States and the court of appeals finds from the pleadings and affidavits that no genuine issue of material fact about the petitioner's nationality is presented, the court shall decide the nationality claim.
> >
> > (B) Transfer if issue of fact
> >
> > If the petitioner claims to be a national of the United States and the court of appeals finds that

a genuine issue of material fact about the petitioner's nationality is presented, the court shall transfer the proceeding to the district court of the United States for the judicial district in which the petitioner resides for a new hearing on the nationality claim and a decision on that claim as if an action had been brought in the district court under section 2201 of Title 28.

(C) Limitation on determination

The petitioner may have such nationality claim decided only as provided in this paragraph.

Thus, if no genuine issue of material fact is presented, we must decide the nationality claim. 8 U.S.C. § 1252(b)(5)(A). If a genuine issue of material fact is presented, we must transfer the proceedings to the district court for an evidentiary hearing. 8 U.S.C. § 1252(b)(5). In determining if a genuine issue of material fact is presented, we employ principles of summary judgment practice. See Joseph v. Att'y Gen., 421 F.3d 224, 229-30 (3d Cir. 2005).

Oca-Montero argues that (1) his parents were legally separated, and (2) his father had legal custody of him at the time his father was naturalized. The Government argues that Oca-Montero has not presented a genuine issue of material fact, but that the only issues presented are legal in nature, which we should decide in its favor.

**B.**

Oca-Montero argues that his parents' common-law marriage was terminated by their permanent separation in fact and the subsequent remarriage of his mother. Petr.'s Br. 8. His mother remarried on April 14, 1981, before Oca-Montero was eighteen. The BIA found that Oca-Montero did not establish the legal separation of his parents, because Dominican law does not define when common-law marriages end. It noted that, while the Dominican Republic may be "working on" a law that would specify rules for the termination of common-law marriages, there was nonetheless nothing in the record indicating that Oca-Montero's parents brought their marriage to any formal end, as required by § 321(a). A.R. at 2.

In Morgan, we held that a legal separation for purposes of § 321(a) "occurs only upon a formal governmental action, such as a decree issued by a court of competent jurisdiction that, under laws of a state or nation having jurisdiction over the marriage, alters the marital relationship of the parties." 432 F.3d at 234. We need not decide whether Oca-Montero's mother's remarriage in the state of New York in 1981, which certainly altered the former marital relationship of the parties, should be presumed equivalent to a formal separation decree because we can decide this appeal on another ground.

**C.**

In order to have derivative citizenship under section 321(a)(3), Oca-Montero must prove that he was in the legal custody of his father at the time of his father's

7

naturalization. The Government argues that there is nothing in the record regarding custody beyond Oca-Montero's personal claims. In Matter of M—, 3 I. & N. Dec. 850 (BIA 1950), the BIA held that in the absence of a judicial decree awarding custody, "actual uncontested custody" would suffice. Although we did not explicitly adopt Matter of M— in our divided opinion in Bagot v. Ashcroft, 398 F.3d 252, 260-61 (3d Cir. 2005), the parties in the present case agree that Matter of M— controls. See id. at 261, 270; Pet'r Br. 12; Resp't Br. 21. Thus, if there is no judicial grant of custody to a particular parent, the parent with "actual uncontested custody" is deemed to have legal custody.

In Oca-Montero's case, there was no judicial determination of custody. Instead, he argues that his father had "actual uncontested custody" of him when he was naturalized. Curiously, he presented no evidence to support his claim. As we held in Bagot, the burden of proof of eligibility for citizenship is on the applicant. Bagot, 398 F.3d at 256-57. Even if Montes De Oca-Montero were in fact living with his father at the time his father was naturalized, there is no evidence in the record to indicate that this situation was uncontested or permanent as is required under Matter of M— to constitute "legal custody" for purposes of Section 321(a). There is no evidence in the record that his mother consented to the custody arrangement. The IJ certainly gave Oca-Montero many opportunities to present his evidence for citizenship. See A.R. at 37-64. Instead, counsel's unsupported assertions are the only indication in the record that his father may have had uncontested custody of him. See A.R. at 74. A review of the record reveals absolutely no evidence that Oca-Montero was in his father's custody. While Oca-

8

Montero may be correct in his assertion that the IJ did not fully address this issue, the BIA did conduct a full review of the record and found no evidence of custody. Thus, without any evidence in the record demonstrating that his father had "actual uncontested custody," there is no genuine issue of material fact that would warrant transfer to a district court for a factual hearing.

### III.

For the reasons set forth above, we will deny the petition for review.