NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-3204
_____

CHEVAN ROBINSON,
a/k/a Chevan Boyd St. Patrick Robinson,
                              Petitioner

v.

ATTORNEY GENERAL OF THE
UNITED STATES OF AMERICA,
                              Respondent
_____

On Petition for Review of a
Decision of the Board of Immigrations Appeals
Immigration Judge: Alberto J. Riefkohl
(A#045-877-363)
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
March 21, 2016
_____

Before: GREENAWAY, JR., VANASKIE, and SHWARTZ, *Circuit Judges*.

(Opinion Filed: April 26, 2016)

_____

OPINION*
_____

_____
    * This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

1

GREENAWAY, JR., *Circuit Judge*.

Chevan Robinson asks us to determine whether the Board of Immigration Appeals

("BIA") erred when it affirmed the Immigration Judge's ("IJ") decision concluding that

he had not derived citizenship through his father's naturalization pursuant to former 8

U.S.C. § 1432(a).[1]  For the reasons set forth below, we will deny the petition for review.

## I.      FACTS

The facts relevant to our decision are not in dispute.[2]  Robinson was born in

---

[1] Former § 1432(a) provided in pertinent part that:

> A child born outside of the United States of alien parents . . .
> becomes a citizen of the United States upon fulfillment of the
> following conditions:
> . . .
>
> (3) The naturalization of the parent having legal custody of the
> child when there has been a legal separation of the parents or
> the naturalization of the mother if the child was born out of
> wedlock and the paternity of the child has not been established
> by legitimation; and if
> (4) Such naturalization takes place while such child is under the
> age of eighteen years; and
> (5) Such child is residing in the United States pursuant to a
> lawful admission for permanent residence at the time . . . the
> parent naturalized under clause . . . (3) of this subsection, or
> thereafter begins to reside permanently in the United States
> while under the age of eighteen years.

[2] Pursuant to 8 U.S.C. § 1252(b)(5), "[i]f the petitioner claims to be a national of
the United States and the court of appeals finds from the pleadings and affidavits that no
genuine issue of material fact about the petitioner's nationality is presented, the court
shall decide the nationality claim."

2

Jamaica on September 4, 1981, to Clarence Robinson and Olive Gayle. His parents never married. On February 16, 1995, Robinson's father became a naturalized United States citizen. On May 2, 1997, at the age of 15, Robinson was admitted to the United States as a lawful permanent resident, and began living with his father. His mother never naturalized, nor did she participate in his upbringing after Robinson began living with his father.

Subsequently, Robinson was convicted in New Jersey Superior Court of distribution of a controlled substance (cocaine), contempt, and theft by deception. Based on these convictions, on January 22, 2015, Robinson was served with a Notice to Appear indicating he was removable pursuant to 8 U.S.C. § 1227(a)(2)(B)(i) and (a)(2)(A)(iii). Robinson's March 13, 2015 removal hearing was adjourned so that he could file an application for relief based on his claim that he was not removable because he was a United States citizen, having derived citizenship from his father. By order dated April 8, 2015, the IJ denied this relief, concluding that, since his parents were never married, they could never have legally separated. As a result, Robinson was not eligible for relief under former § 1432(a). On April 13, 2015, the IJ found Robinson removable, and ordered him removed to Jamaica. Finding no error, the BIA dismissed the appeal.

## II.      JURISDICTION AND STANDARD OF REVIEW

Since Robinson's removability is based on his having committed a controlled substance offense, our jurisdiction over his petition is limited to questions of law and

constitutional claims. 8 U.S.C. § 1252(a)(2)(D). The issue of derivative citizenship, the only question Robinson raises,[3] "is a purely legal question of statutory interpretation." *See Morgan v. Att'y Gen.*, 432 F.3d 226, 229 (3d Cir. 2005).

This Court reviews decisions of the BIA de novo, "subject to established principles of deference." *Wang v. Ashcroft*, 368 F.3d 347, 349 (3d Cir. 2004). These "principles of deference" include the deference owed to administrative agencies pursuant to *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984). But "because there are dual sources of jurisdiction applicable here, a split exists among courts of appeals on whether the BIA's interpretation of section 1432(a) is subject to the deferential review specified in *Chevron*." *Brandao v. Att'y Gen.*, 654 F.3d 427, 428 (3d Cir. 2011). We have not addressed this issue in the past, and we need not address it here, as deference to the BIA would not alter our conclusion in this case. *Id.*

Although § 1432(a) was repealed in 2000, it continues to control claims of derivative citizenship in cases such as this one, where "all relevant events respecting [the alien's] claimed derivative citizenship occurred prior to" its repeal. *Jordon v. Att'y Gen.*, 424 F.3d 320, 328 (3d Cir. 2005). "The relevant times are the date of the child's birth, the time of the child's entry into the United States, and the date of the parent's naturalization." *Morgan*, 432 F.3d at 230. All critical events – Robinson's birth, entry into the U.S., and his father's naturalization – occurred before 2000 when former 8

---

[3] Before the IJ, Robinson acknowledged his only application for relief was his claim under former § 1432.

4

U.S.C. § 1432(a) was still in effect.

## III. DISCUSSION

Robinson raises both legal and constitutional challenges to the BIA's decision. Acknowledging that "his parents were never married," (Br. 15), Robinson argues that, since this Court's decision in *Morgan* permits relief under § 1432(a) based on separations like those of his parents (i.e., situations where the parents never married, but live apart) both the IJ and BIA erred in concluding that he failed to satisfy the requirement that his parents were legally separated. Contrary to Robinson's assertions, in *Morgan*, we did not adopt such a broad reading of "legally separated." Rather, we held that a "legal separation for purposes of § 1432(a) occurs only upon a formal governmental action, such as a decree issued by a court of competent jurisdiction that, under the laws of a state or nation having jurisdiction over the marriage, alters the marital relationship of the parties." *Morgan*, 432 F.3d at 234.

Based on this holding, Robinson's argument that the letter from his mother, dated March 17, 2015, suffices to demonstrate a legal separation, as required by the statute fails. Since the letter does not reference any formal governmental action effectuating a legal separation, Robinson provides no support for his assertion that "the over 30 years of disconnection between the parties,[sic] serves the clear equivalent of a legal separation of the parties." (Br. 20.) In fact, Robinson concedes that since his "parents were never married . . . [he] cannot provide proof that there was ever a *legal separation* of the parties." (Br. 18 (emphasis in original).) This concession is consistent with our holding

5

in *Morgan* and the language of the statute – a couple that was not married could not be legally separated, as required by former § 1432(a).[4]

Turning to his equal protection claim, we have previously concluded that former § 1432(a) does not violate equal protection principles when applied to children born out of wedlock or unwed fathers. *Catwell v. Att'y Gen.*, 623 F.3d 199, 211 (3d Cir. 2010) ("The differential treatment embodied in 8 U.S.C. § 1432(a)(3) similarly withstands equal protection scrutiny . . . ."). The arguments Robinson raises were already considered and rejected in *Catwell*.

Finally, Robinson claims "[t]he IJ also grounded his decision on the decision of [the United States Customs and Immigration Service ("USCIS")] denying Petitioner's N-600 application." (Br. 22.) A review of both the IJ and BIA decisions reveals no indication that either the IJ or BIA relied solely on the USCIS decision in reaching their decision. Rather, both the IJ and BIA relied on Third Circuit precedent and the facts of this case.

## IV. CONCLUSION

---

[4] Robinson also seeks to rely on a footnote in *Morgan* in which we noted that "some jurisdictions might consider parties 'legally separated' if they lived apart for a period of time without seeking any governmental imprimatur." 432 F.3d at 234 n.4. In that same footnote, however, we also made clear that "[w]e know of no jurisdiction that has adopted such a policy." *Id.* Moreover, even if a jurisdiction considered parties legally separated if they lived apart for a period of time without seeking any governmental imprimatur, it is not likely that such a policy would apply to unmarried (versus married) couples, as unmarried couples presumably do not have a legal relationship to dissolve. *See Lewis v. Gonzales*, 481 F.3d 125, 130 n.4 (2d Cir. 2007) (characterizing as "remote" the possibility that "some jurisdiction might allow unwed

6

For the reasons set forth above, we will deny the petition for review.