**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-2120
_____

LUIS ANDRES COELLO-UDIEL,
                                        Petitioner

v.

ATTORNEY GENERAL OF THE
UNITED STATES OF AMERICA,
                                        Respondent
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A043-172-142)
Immigration Judge: Walter A. Durling
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
January 8, 2019
_____

Before:  AMBRO, KRAUSE, and FUENTES, *Circuit Judges*

(Filed February 5, 2019)
_____

OPINION*
_____

_____

        * This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

KRAUSE, *Circuit Judge.*

Luis Andres Coello–Udiel petitions for review of the decision of the Board of Immigration Appeals (BIA) affirming the Immigration Judge's denial of relief under the Convention Against Torture ("CAT"). For the reasons that follow, we will deny the petition for review.

## I.    Jurisdiction and Standard of Review

We have jurisdiction to review final orders of the BIA under 8 U.S.C. § 1252(a), but because Coello–Udiel is subject to removal based on an aggravated felony conviction, that jurisdiction is limited to "constitutional claims or questions of law," which we review *de novo*, and does not extend to factual or discretionary determinations. *Myrie v. Att'y Gen.*, 855 F.3d 509, 515 (3d Cir. 2017) (internal quotation marks omitted); 8 U.S.C. § 1252(a)(2)(B)–(D).[1] Although we review the BIA's decision, we also consider the IJ's opinion where the BIA "has substantially relied on that opinion." *Camara v. Att'y Gen.*, 580 F.3d 196, 201 (3d Cir. 2009).

## II.    Discussion

Coello–Udiel argues that he was denied due process in his removal proceedings. In particular, he objects that the merits hearing was "incredibly short and fast," Pet. Br.

---

[1] In this regard, the Government has moved to dismiss Coello–Udiel's petition for review for lack of jurisdiction, arguing that he has failed to raise a colorable constitutional or legal claim. While we conclude for the reasons below that Coello–Udiel's claim ultimately fails on the merits, we do not consider it to be "immaterial and made solely for the purpose of obtaining jurisdiction" or otherwise "wholly insubstantial and frivolous." *Pareja v. Att'y Gen.*, 615 F.3d 180, 186 (3d Cir. 2010) (quoting *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 513 n.10 (2006)).

at 14, and asserts that the IJ did not give him an opportunity to address the IJ's concerns before denying relief. The IJ erred, he contends, by "not asking more questions when [he] had concerns, providing [Coello–Udiel] the opportunity to further develop and clarify the [IJ's] confusion regarding why [his supporting] facts are not speculative." Pet. Br. at 18.

Aliens facing removal are entitled to due process, *Sewak v. INS*, 900 F.2d 667, 671–72 (3d Cir. 1990), meaning "the opportunity to be heard at a meaningful time and in a meaningful manner," *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quotation marks, alterations, and citation omitted). To ensure due process in removal proceedings, "[a]n alien: (1) is entitled to factfinding based on a record produced before the decisionmaker and disclosed to him or her; (2) must be allowed to make arguments on his or her own behalf; and (3) has the right to an individualized determination of his or her interests." *Abdulai v. Ashcroft*, 239 F.3d 542, 549 (3d Cir. 2001) (quotation marks, alterations, and citations omitted). And to prove a denial of due process on the ground that he was prevented from presenting his case to the IJ or BIA, the alien must show: "(1) that he was prevented from reasonably presenting his case and (2) that substantial prejudice resulted." *Fadiga v. Att'y Gen.*, 488 F.3d 142, 155 (3d Cir. 2007) (internal quotation marks and citation omitted).

Here, the record does not support Coello–Udiel's claim that he was prevented from reasonably presenting his case. Coello–Udiel not only had the opportunity to argue before the IJ and BIA through counsel but also presented testimony and documentary evidence, including news articles and country condition reports. Following the hearing,

3

the IJ discussed that testimony and evidence—observing that Coello–Udiel was a credible witness, that he feared being tortured and killed by MS-13, and that he had twice been threatened by gang members in the United States—but the IJ ultimately concluded that Coello-Udiel's fear of torture with the consent or acquiescence of Honduran officials was merely speculative.

Nor does the record support Coello-Udiel's assertion that the IJ failed to ask follow-up questions. Following Coello–Udiel's testimony and counsel's argument, the IJ specifically asked counsel for additional case law supporting the notion that the Honduran government acquiesces in torture, but counsel was unable to cite to such case law. While it is true that the IJ did not recess the proceedings for counsel to conduct further research, due process does not require an IJ, after the conclusion of a merits hearing, to provide counsel with additional time to search for cases or gather unspecified evidence. *See Morgan v. Att'y Gen.*, 432 F.3d 226, 234–35 (3d Cir. 2005) (holding that IJ did not deny alien due process by denying motions to continue).

In any event, even assuming some error by the IJ or BIA in the extent of evidence or argument permitted, Coello–Udiel has failed to demonstrate substantial prejudice, as he does not identify what evidence he would have provided or what arguments he would have made. *See id.* at 235. Instead, he merely rehashes the evidence he presented to the IJ and argues that it was indeed sufficient to demonstrate that the risk of torture with the acquiescence of Honduran officials was more than speculative. Such sufficiency-of-the-evidence arguments, however, are beyond our purview. *See Myrie*, 855 F.3d at 515.

Finally, Coello–Udiel argues that the IJ and BIA, as a common-sense matter,

4

should have taken judicial notice that he would inevitably be targeted by MS-13 members upon return to Honduras. He asserts as "commonly acceptable [*sic*] circumstances" that corruption is rampant in Honduras, that MS-13 operates with impunity there, and that, due to the "street code" under which the gang operates, Coello–Udiel would nearly certainly be labeled a "snitch" and would be murdered. Pet. Br. at 13, 20. To the extent these arguments challenge the determination that he was not likely to be tortured in Honduras with the acquiescence of government officials, they challenge a factual finding over which we lack jurisdiction. *See Myrie*, 855 F.3d at 515. And taking the IJ's factual findings as true, the IJ and BIA did not commit legal error by denying Coello-Udiel's application on the basis that he was not likely to be tortured in Honduras with the acquiescence of the Honduran government. *See Kamara v. Att'y Gen.*, 420 F.3d 202, 211 (3d Cir. 2005).

## III.    Conclusion

For the foregoing reasons, we will deny Respondent's motion to dismiss and Coello–Udiel's petition for review.