**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-3218
_____

BERNARDO AGUSTIN LLOYD CALLENDER,

Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A031-158-553)
Immigration Judge: Nelson A. Vargas-Padilla
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
on August 18, 2021

Before: GREENAWAY, JR., KRAUSE, and BIBAS, Circuit Judges

(Opinion filed: November 24, 2021)
_____

---

OPINION*

---

PER CURIAM

Bernardo Agustin Lloyd Callender petitions pro se for review of a final order of removal. For the reasons that follow, we will deny the petition.

I.

Lloyd Callender is a citizen of Panama. Although Lloyd Callender and his family resided in the Canal Zone in Panama when he was a child, he was born in a hospital in Panama outside of the Canal Zone, in 1967. Lloyd Callender's parents were not married when he was born but got married soon after. His father became a U.S. citizen in 1970 while he was serving in the U.S. military.

Lloyd Callender came to the United States with his parents as a lawful permanent resident in 1971, when he was four years old. His parents physically separated after they arrived in the United States. After the separation, Lloyd Callender lived with his father, but there was no formal custody decree or legal separation in place. His parents legally divorced in 1996, when he was 29 years old. Lloyd Callender's mother became a U.S. citizen in 2000, when he was 33 years old.

In 2004, Lloyd Callender was convicted of drug, weapons, and assault offenses in the United States District Court for the District of Columbia. In 2019, he was served with a

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Notice to Appear and was charged as removable based on several criminal convictions, including two aggravated felonies. Lloyd Callender sought to terminate his removal proceedings, arguing that he had derived U.S. citizenship from his father and that he was a citizen based on his contention that he was born in the Canal Zone in Panama.

At a hearing where Lloyd Callender was represented by counsel, he conceded that he had committed the criminal offenses listed in his Notice to Appear and conceded that he was born in Panama, outside of the Canal Zone. However, he presented arguments about derivative citizenship. An Immigration Judge ("IJ") concluded that Lloyd Callender was removable as charged and rejected his claim of citizenship. The Board of Immigration Appeals ("BIA") affirmed that ruling. Lloyd Callender timely petitioned for review.

## II.

Our jurisdiction is limited when, as here, a petitioner is removable due to a conviction for an aggravated felony. See 8 U.S.C. §§ 1252(a)(2)(C), 1227(a)(2)(A)(iii); see also 8 U.S.C. § 1101(a)(43)(B), (F). However, we retain jurisdiction to review a petitioner's colorable constitutional claims and questions of law. See 8 U.S.C. § 1252(a)(2)(D); see also Papageorgiou v. Gonzales, 413 F.3d 356, 358 (3d Cir. 2005). We generally have jurisdiction to review nationality claims, including those asserting derivative citizenship. 8 U.S.C. § 1252(b)(5)(A). Because the parties dispute only the legal significance of the facts underlying Lloyd Callender's arguments and not the facts themselves, we can decide his arguments as a matter of law. Cf. Joseph v. Att'y Gen., 421 F.3d 224, 229-30 (3d Cir. 2005).

III.

On review, Lloyd Callender argues that he derived citizenship from his U.S. citizen father as a child because he lived with his father while his parents were physically separated.

Under 8 U.S.C. § 1432(a), the law in effect before Lloyd Callender turned 18, "a child born outside the United States automatically acquires United States citizenship if, while the child is under the age of eighteen, the parent with legal custody of the child is naturalized while that child's parents are legally separated."[1] Morgan v. Att'y Gen., 432 F.3d 226, 228 (3d Cir. 2005). That section also provides for other ways of deriving U.S. citizenship from a parent, but Lloyd Callender has not argued that any of those other circumstances apply here.

The BIA rejected this claim because Lloyd Callender's parents did not legally separate before he turned 18. He argues that no formal judicial decree was necessary. We disagree.

Even assuming that a child could automatically naturalize under § 1432(a) after his parents legally separate if the custodial parent naturalized prior to the separation, we have held that "a legal separation for purposes of § 1432(a) occurs only upon a formal governmental action, such as a decree issued by a court of competent jurisdiction that, under the

---

[1] "The law applicable is that in effect at the time the critical events giving rise to the claim for derivative citizenship occurred." Morgan v. Att'y Gen., 432 F.3d 226, 230 (3d Cir. 2005). Since 2001, children born abroad automatically naturalize if a custodial parent naturalizes, even if there has been no legal separation between the parents, but Lloyd Callender was already over the age of 18 in 2001 and the law is not retroactive. See id. at 230 n.1.

4

laws of a state or nation having jurisdiction over the marriage, alters the marital relationship of the parties." See Morgan, 432 F.3d at 234. An individual cannot derive citizenship from a custodial U.S. citizen parent under § 1432(a), even where that individual's parents have informally lived apart for decades, if there was no "formal government action" before the separation, as described in Morgan. Dessouki v. Att'y Gen., 915 F.3d 964, 967 (3d Cir. 2019). Lloyd Callender argues in his brief that Black's Law Dictionary's definition of a "separation" includes an agreement to live apart by mutual consent, but that does not constitute formal governmental action as required by § 1432(a). See Morgan, 432 F.3d at 234. The only formal governmental action identified by Lloyd Callender was his parents' divorce in 1996, which occurred well after he turned 18. Accordingly, the agency appropriately determined that Lloyd Callender could not establish derivative citizenship through his father under § 1432(a).

Lloyd Callender raises several other claims in his brief, all of which were either not raised or were explicitly conceded during his counseled hearing on his motion to terminate before the IJ. He did raise these claims before the BIA. Presumably, the BIA could have either deemed these claims waived for Lloyd Callender's failure to raise them before the IJ, see Prabhudial v. Holder, 780 F.3d 553, 555 (2d Cir. 2015) (per curiam), or excused the waiver and addressed them on the merits, thus rendering them administratively exhausted, cf. Lin v. Att'y Gen., 543 F.3d 114, 124-25 (3d Cir. 2008) (discussing Sidabutar v. Gonzalez, 503 F.3d 1116, 1119-20 (10th Cir. 2007)). Instead, the BIA did not address these claims.

5

However, even if the BIA erred by not discussing these claims, remand to the agency would be futile. See Ricketts v. Att'y Gen., 955 F.3d 348, 351-52 (3d Cir. 2020); Yuan v. Att'y Gen., 642 F.3d 420, 427 (3d Cir. 2011). Lloyd Callender argues that he is a U.S. national because he has pledged his allegiance to the U.S. and has lived here most of his life, but we have held that for "a citizen of another country, nothing less than citizenship will show permanent allegiance to the United States." See Salim v. Ashcroft, 350 F.3d 307, 310 (3d Cir. 2003) (per curiam) (internal quotation marks omitted).

Lloyd Callender also maintains that one of his criminal offenses, a drug offense, is not an aggravated felony and should not have been a basis for his removal. However, Lloyd Callender was convicted of several other offenses that were a basis for his removability, including another aggravated felony, see 8 U.S.C. § 1101(a)(43)(F), and he does not contest that his other convictions would render him removable if he is not a U.S. citizen. See Yuan, 642 F.3d at 427.

Finally, Lloyd Callender contends that there is a "statute of limitations" on deportations and that DHS waited too long after his convictions in 2004 to begin his removal proceedings in 2019. Although there is a time-bar on the initiation of removal proceedings from improperly granted lawful permanent resident status, see Malik v. Att'y Gen., 659 F.3d 253, 257 (3d Cir. 2011), there is no specific time-bar that applies generally to deportation proceedings stemming from an underlying criminal offense, see Restrepo v. Att'y Gen., 617 F.3d 787, 801 (3d Cir. 2010).

Accordingly, we will deny Lloyd Callender's petition.