

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-12-2006

# Calix-Chavarria v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-3447

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Calix-Chavarria v. Atty Gen USA" (2006). *2006 Decisions.* Paper 1116.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1116

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 05-3447
_____

JOSE A. CALIX-CHAVARRIA,
                                        Petitioner,

v.

ATTORNEY GENERAL OF THE UNITED STATES
_____

On a Petition For Review of an Order
of the Board of Immigration Appeals
Agency No. A42-785-878
Immigration Judge: Honorable Walter A. Durling
_____

Submitted Under Third Circuit LAR 34.1(a)
April 14, 2006

Before; MCKEE, FUENTES AND NYGAARD, <u>CIRCUIT JUDGES</u>

(Filed May 12, 2006)

_____

OPINION
_____

PER CURIAM

Petitioner Jose Calix-Chavarria, a native of Honduras, entered the United States as

an immigrant on July 11, 1990 at the age of eight. On August 26, 2002, Chavarria was

convicted in the Franklin County, Pennsylvania Court of Common Pleas of possession of

a controlled substance, 1 gram of cocaine, with intent to deliver in violation of 35 Pa. Cons. Stat. Ann. § 780-113(a)(30). Chavarria was sentenced to nine months in the Franklin County Prison Work Release Program. Removal proceedings were commenced, and the Notice to Appear charged Chavarria as removable pursuant to Immigration and Nationality Act § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii), as an alien convicted of an aggravated felony. He later was charged as removable, in addition, pursuant to INA § 237(a)(2)(B), 8 U.S.C. § 1227(a)(2)(B), as an alien convicted of a controlled substance violation.

Chavarria petitioned the Immigration Court to recognize him as a United States citizen. A.R. 88-89. His mother, Reina Calix, who was divorced from his father, applied for citizenship when he was 16.[1] Her application was submitted with his name on it as her minor child entitled to derivative citizenship. Although he turned 18 by the time she actually was naturalized, under the Child Status Protection Act, his claim to derivative American citizenship should not fail because he met the age requirement when she made her application.

The Immigration Judge denied Chavarria's claim, because, as a matter of fact, he turned 18 on November 17, 1999 and his mother was not naturalized until March 10, 2000. The IJ commented, however, that: "There's a question I suppose that you were under the age of 18 while the application was pending, it was just by fortuitous

---

[1] Chavarria was born on November 17, 1981. Thus, he actually was 15 when his mother applied for citizenship.

2

circumstances, or lack thereof in your case that it took the Government that much time to adjudicate your mother's citizenship application and grant her citizenship." A.R. 78. The IJ further concluded that Chavarria did not qualify for derivative citizenship under the Child Citizenship Act of 2000, because he already was 18 when this act went into effect on February 27, 2001. Chavarria was ordered to be removed from the United States to Honduras as an alien convicted of an aggravated felony, his cocaine conviction qualifying as a drug trafficking conviction.

Chavarria appealed to the Board of Immigration Appeals. The administrative record indicates that the Office of the Clerk issued a briefing schedule, directing Chavarria to submit his brief by September 29, 2004. A.R. 26. The administrative record further indicates that Chavarria's brief, which he titled "Motion for Relief from Deportation Due to Claim to National or Citizenship Derived from his Mother A Naturalized United States Citizen," was received by the Board on September 15, 2004. A.R. 14, 15, 21. In his "brief," Chavarria raised the same derivative citizenship argument he raised before the IJ, that is, he contended that, under the Child Status Protection Act, his age at the time his mother applied for naturalization should determine his derivative citizenship claim.

On October 18, 2004, the Board affirmed without opinion under 8 C.F.R. § 1003.1(e)(4). Meanwhile, in September 2004, Chavarria filed a petition for writ of habeas corpus in United States District Court for the Middle District of Pennsylvania, which, after passage of the Real ID Act of 2005, § 106(a), Pub. L. No. 109-13, was

3

transferred here by the District Court for treatment as a petition for review.[2]

We will grant the petition for review, vacate the October 18, 2004 decision of the Board of Immigration Appeals, and remand the matter for consideration of Chavarria's argument that the reasoning of the Child Status Protection Act applies to his claim for derivative citizenship. When the Board affirms without opinion, we review the Immigration Judge's decision. Dia v. Ashcroft, 353 F.3d 228, 245 (3d Cir. 2003) (en banc). The issue of derivative citizenship of an alien is a purely legal issue of statutory interpretation, see Morgan v. U.S. Attorney General, 432 F.3d 226, 229 (3d Cir. 2005), over which we exercise plenary review, see Jordan v. U.S. Attorney General, 424 F.3d 320, 328 (3d Cir. 2005).

A "criminal alien" is one who is deportable for having committed certain offenses covered in 8 U.S.C. § 1227(a)(2)(A)(iii), including aggravated felonies. An "aggravated felony" includes "illicit trafficking in a controlled substance (as defined in section 802 of Title 21), including a drug trafficking crime (as defined in section 924(c) of Title 18)." 8 U.S.C. § 1101(a)(43)(B). In Gerbier v. Holmes, 280 F.3d 297, 312 (3d Cir. 2002), we held that a state drug conviction constitutes an aggravated felony if it is a felony under

---

[2] Transfer of the habeas petition was proper. The REAL ID Act eliminated judicial review in habeas of a final order of removal, but it permits review of constitutional claims and questions of law of the type raised by Chavarria in his petition for review. 8 U.S.C. § 1252(a)(2)(D). See also Papageorgiou v. Gonzales, 413 F.3d 356, 358-59 (3d Cir. 2005). The Act also provided for transfer of habeas petitions pending in the district courts to the courts of appeals, and further provided that the mandatory 30-day time period for filing a petition for review, 8 U.S.C. § 1252(b)(1), shall not apply to transferred cases.

4

state law and contains a trafficking element. A trafficking element involves "the unlawful trading or dealing of any controlled substance." Steele v. Blackman, 236 F.3d 130, 135 (3d Cir. 2001). "Essential to the concept of trading or dealing is activity of a business or merchant nature, thus excluding simple possession or transfer without consideration." Id. (internal quotation marks and citation omitted).

In applying the formal categorical approach of Taylor v. United States, 495 U.S. 575 (1990), for determining whether an alien's conviction is for an aggravated felony, we may look only to the statutory definition of the offense, and may not consider the particular facts underlying a conviction. Singh v. Ashcroft, 383 F.3d 144, 147-48 (3d Cir. 2004). Section 780-113(a)(30) of the Pennsylvania criminal code provides in pertinent part that "possession with intent to ... deliver" a controlled substance is a prohibited act. Chavarria's conviction is a felony under state law punishable by imprisonment not exceeding ten years. 35 Pa. Cons. Stat. Ann. § 780-113(f)(1.1).

The Attorney General has argued that section 780-113(a)(30) also contains a trafficking element, but we are not persuaded. The Pennsylvania Superior Court held in Commw. v. Morrow, 650 A.2d 907 (Pa. Super. Ct. 1994), that an individual may violate section 780-113(a)(30) without an exchange of money and without a profit because the prohibited conduct is the "actual, constructive or attempted transfer from one person to another." Id. at 912. See also Commw. v. Jones, 586 A.2d 433, 435-36 (Pa. Super. Ct. 1991).

However, even assuming that section 780-113(a)(30) does not contain a trafficking

5

element, we must still analyze whether Chavarria's conviction constitutes an aggravated felony under the "hypothetical federal felony" route. <u>Gerbier</u>, 280 F.3d at 315. To determine whether a state drug conviction qualifies as a "hypothetical federal felony" under § 924(c)(2) (defining "drug trafficking crime" as "any felony punishable under the Controlled Substances Act ..."), we must look to see whether the state drug conviction is punishable as a felony under the Controlled Substances Act. <u>Id.</u>

Whether a substantive drug offense contained in the Controlled Substances Act is a felony is controlled by 18 U.S.C. § 3559, which provides that, if the crime prescribes a maximum sentence of more than one year, it is a felony. Here, the pertinent federal analog is 21 U.S.C. § 841(a), which prohibits the knowing or intentional "possess[ion] with intent to ... distribute" a controlled substance, for example, cocaine. Possession with intent to distribute cocaine carries a maximum penalty in excess of one year. 21 U.S.C. § 841(b)(1)(C) (providing for a maximum sentence of 20 years). Unlike the Delaware statute in <u>Gerbier</u>, 280 F.3d at 300-01, section 780-113(a)(30) is not in any part a possession statute. Thus, the federal possession statute, 21 U.S.C. § 844(a), is not the pertinent federal analog.

Therefore, Chavarria's conviction is for an aggravated felony under federal immigration law. Chavarria, however, claims to be a United States citizen pursuant to former INA § 321(a), 8 U.S.C. § 1432(a), which generally provides for derivative

citizenship of alien children upon their parents' naturalization.[3]  As such, he cannot be

removed from the United States for his drug conviction.

We look to the actual language of a statute in interpreting it.  Connecticut Nat'l

Bank v. Germain, 503 U.S. 249, 253-54 (1992).  Section 321(a) provides in relevant part

that:

> A child born outside of the United States of alien parents ... becomes a
> citizen of the United States upon fulfillment of the following conditions:
>
> (1)     The naturalization of both parents; or
>
> (2)     The naturalization of the surviving parent if one of the parents is
> deceased; or
>
> (3)     The naturalization of the parent having legal custody of the child
> when there has been a legal separation of the parents or the
> naturalization of the mother if the child was born out of wedlock and
> the paternity of the child has not been established by legitimation;
> and if
>
> (4)     such naturalization takes place while such child is under the age of
> eighteen years; and
>
> (5)     such child is residing in the United States pursuant to a lawful
> admission for permanent residence at the time of the naturalization
> of the parent last naturalized under clause (2) or (3) of this
> subsection, or thereafter begins to reside permanently in the United

---

[3] Section 321, 8 U.S.C. § 1432, was repealed by the Child Citizenship Act of 2000 ("CCA"), Pub. L. No. 106-395, which took effect on February 27, 2001.  The CCA liberalized the conditions for derivative citizenship of alien children of naturalized parents, but it is not retroactive.  See, e.g., Drakes v. Ashcroft, 323 F.3d 189, 191 (2d Cir. 2003).  Thus, former section 321, which was in effect when Chavarria was born, when he turned 18, and when his mother naturalized, controls his claim for derivative citizenship.  See, e.g., Bagot v. Ashcroft, 398 F.3d 252, 257 n.3 (3d Cir. 2005).  We agree with the IJ that the CCA does not apply retroactively to grant derivative citizenship to Chavarria.

States while under the age of eighteen years.

8 U.S.C. § 1432(a) (repealed).

Reina Calix applied for citizenship on July 30, 1997. Chavarria was 15 at the time and living with his mother. It evidently is not in dispute that Chavarria satisfies subparagraphs (a)(3) and (a)(5). Subparagraph (a)(4), however, by its literal terms requires that, "such naturalization takes place while such child is under the age of eighteen years." Former INA § 321(a)(4) thus appears to defeat Chavarria's claim for derivative citizenship, because his mother did not naturalize until almost four months after he turned 18. In short, he was not *under* the age of 18 when his mother actually naturalized.

Chavarria, however, had no control over the process of applying, and would have derived citizenship if the entire process had taken 27½ months instead of almost 31½ months. The Child Status Protection Act of 2002 ("CSPA"), Pub. L. No. 107-208, 116 Stat. 927, amended the Immigration and Nationality Act to provide "age-out" protection for individuals who were children at the time a petition or application for *permanent resident status* was filed on their behalf. See Padash v. Immigration & Naturalization Serv., 358 F.3d 1161, 1167 (9th Cir. 2004). The CSPA is not directly applicable to Chavarria's derivative citizenship claim; it applies only to INA §§ 201, 203, 204, 207(c)(2), and 208(b)(3), see 8 U.S.C. § 1151, 1153, 1154, 1157(c)(2), and 1158(b)(3), respectively.

Whether the CSPA's *reasoning* should apply to Chavarria's case is another matter

8

altogether, however.  The purpose of the CSPA was to address the problem of those aliens, who through no fault of their own, lost the opportunity to adjust their status. Padesh, 358 F.3d at 1172-73 (citing 2002 U.S.C.C.A.N. 640, 641)).  In recommending the bill, the House Judiciary Committee noted that, because of administrative delays of up to three years, approximately one thousand of the visa applications reviewed each year were for individuals who had aged-out since the time they had filed their petitions.  Id.  The CSPA was intended to address the "harsh and arbitrary" effects of age-out provisions. Padesh, 358 F.3d at 1173.

These concerns in the context of adjustment of status are no less important in the context of citizenship if, as a matter of fact, there was delay in the processing of Chavarria's mother's application.  Applicants for naturalization must complete the application, get photographed and fingerprinted, submit to a criminal background check, and be examined on the application, English literacy and basic knowledge of the history and government of the United States.  8 C.F.R. § 335.2.  In his reply brief, Chavarria asserts that he and his mother have tried to learn when her N-400 application for citizenship was approved, but immigration authorities have refused to disclose this information.  (Appellant's Reply Brief, at 2.)  He also asserts that his mother took and passed the citizenship written examination prior to his eighteenth birthday.  Id. at 4.

The Attorney General has argued that whether the CSPA's reasoning should apply to Chavarria's case should be addressed by the Board of Immigration Appeals in the first instance, and we agree.  Congress has exclusive constitutional authority over

naturalization.  <u>Immigration & Naturalization Serv. v. Pangilinan</u>, 486 U.S. 875, 882 (1988).  Federal courts do not have the power to confer citizenship in violation of the limitations established by statutes enacted by Congress.  <u>Id.</u> at 884-85.  The congressional command in Chavarria's case, however, is not as manifest as it might be following passage of the CSPA.

Moreover, the Board's failure to address an issue that was briefed, and even noted by the Immigration Judge, does not permit us to draw any conclusions about where the delay occurred.  We do not, for example, know generally how long it took to process an application for naturalization during the relevant time period, how long it took to administer the oath once an application was approved, or whether an alien has any control over the scheduling of the oath which completes the naturalization.  The Attorney General should supply this and other relevant information to the Board on remand.[4]

We will grant the petition for review and vacate the October 18, 2004 decision, and remand the matter to the Board of Immigration Appeals for further proceedings.

---

[4] Finally, Chavarria contends that his continued detention violates due process, <u>see</u> <u>Zadvydas v. Davis</u>, 533 U.S. 678 (2001).  The District Court appropriately exercised jurisdiction over this claim and denied it.  Chavarria timely filed a motion for reconsideration on July 19, 2005.  The Attorney General has argued that we lack authority to review the contention because Chavarria must independently appeal this part of the order disposing of the due process issue on the merits.  <u>See</u> Appellee's Brief, at 23.  We agree that we lack jurisdiction, because Chavarria must independently appeal once the District Court rules on his motion for reconsideration.