PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-4235
_____

MARGARITO CONTRERAS,
a/k/a Margarito Contera Flores;
NORMA CONTRERAS,
a/k/a Norma Perez Merito,

Petitioners

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent

_____

On Petition for Review of a Final Order
of the Board of Immigration Appeals
Immigration Judge:  Honorable Annie Garcy
(No. A088-194-668 & A088-194-669)
_____

Argued November 15, 2011

Before: RENDELL and AMBRO, <u>Circuit Judges</u>
and JONES, II,<sup>*</sup> <u>District Judge</u>

(Opinion filed: January 4, 2012)

Elizabeth C. Surin, Esq.
Thomas C. Brannen, Esq.   **[ARGUED]**
Surin & Griffin
325 Chestnut Street, Suite 1305-P
Philadelphia, PA   19106-0000

*Counsel for Petitioners*

Eric H. Holder, Jr., Esq.
Thomas W. Hussey, Esq.
Cindy S. Ferrier, Esq.
Kate Deboer Balaban, Esq.
Matt A. Crapo, Esq.          **[ARGUED]**
United States Department of Justice
Office of Immigration Litigation, Civil Division
P.O. Box 878
Ben Franklin Station
Washington, DC  20044

*Counsel for Respondent*

_____

OPINION  OF  THE  COURT

_____

<sup>*</sup> Honorable C. Darnell Jones, II, District Judge for the United
States District Court for the Eastern District of Pennsylvania,
sitting by designation.

AMBRO, Circuit Judge

This immigration case requires us to decide, among other things, whether the Fifth Amendment's Due Process Clause guarantees an alien effective assistance of counsel in preparing, filing, and appealing a labor certification application and a visa petition before the start of removal proceedings. We hold that it does not, and thus deny the petition for review.

## I.    Background

Petitioners Margarito Contreras and his wife Norma, both natives and citizens of Mexico, entered the United States unlawfully in 1993 and 1998, respectively. Since 2000, Margarito has been seeking employment-based permanent residency in the United States, *i.e.*, a "green card." This long, complex process requires submitting several applications with supporting documentation to the United States Department of Labor ("DOL") and the United States Customs and Immigration Services ("USCIS") of the Department of Homeland Security ("DHS"). *See Khan v. Att'y Gen.*, 448 F.3d 226, 228 n.2 (3d Cir. 2006); *Matter of Rajah*, 25 I. & N. Dec. 127, 130-33 (BIA 2009).

The process involves three essential steps. First, an alien's employer files a Form ETA-750 labor certification application with the DOL on the alien's behalf. The DOL will approve the application only if, among other things, there are not sufficient United States workers "able, willing, qualified . . . and available" to perform the job. 8 U.S.C. § 1182(a)(5)(A)(i)(I).

3

Second, if the DOL approves the labor certification application, the employer files it along with a Form I-140 visa petition with the USCIS. 8 U.S.C. § 1154(a)(1)(F). Among other things, the employer must prove that it can afford to pay the alien the proffered wage from the time it filed the labor certification application until the time the alien obtains lawful permanent residency. 8 C.F.R. § 204.5(g)(2). If the USCIS approves the visa petition, then it determines the alien's preference classification for a visa and assigns the alien a visa number. Employment-based visas are subject to numerical restrictions controlled by the State Department. 8 U.S.C. § 1153(g).

Third and finally, once a visa is "immediately available," the alien applies for a status adjustment by filing a Form I-485 status adjustment application. 8 U.S.C. § 1255(i). If that application is approved, then the alien becomes a lawful permanent resident and the DHS issues the alien a green card.

An individual like Margarito, who would not ordinarily qualify for lawful permanent residency because he entered the United States without inspection, may nonetheless apply if, among other things, he is the beneficiary of a labor certification application or a visa petition filed on or before April 30, 2001. *See* 8 U.S.C. § 1255(i).

Unfortunately, the Contrerases' former immigration attorney, Tahir Mella (who was not appellate counsel before this Court) provided incompetent, and at times ethically questionable, representation throughout Margarito's visa petition process.

In April 2001, Mella prepared a labor certification application on behalf of Margarito's long-time employer, Barrels Italian Foods and Restaurant, and filed it with the

4

DOL before the April 30 statutory deadline. For reasons unknown, the agency waited more than five years before approving the application in August 2006. Mella then filed a visa petition with the USCIS in January 2007. Ten months after that, in November 2007, the USCIS denied the petition because Barrels failed to prove that it could afford to pay Margarito the proffered wage. The USCIS's written decision, which it mailed to Mella's office, indicated that Barrels could appeal the visa petition denial but that any appeal must be filed within 33 days. None was ever filed. According to Mella, he did not file an appeal because Barrels "pulled out" in December 2007. To the contrary, the owner of Barrels claims that she has "always been willing to sponsor Margarito Contreras."

In January 2008, well after the 33-day appeal window had closed, Margarito met with Mella to discuss his options. Mella told him that for $1,000 he could file a "motion to reopen" the visa petition. Margarito agreed. At some point, however, Mella instead decided to file a motion to reconsider. Notably, he neglected to mention to Margarito that the 30-day time limit to file a motion to reconsider had also passed, *see* 8 C.F.R. § 103.5(a), but Mella accepted the $1,000. In March 2008 Mella finally filed an untimely motion to reconsider the USCIS's denial of the visa petition with the DHS, almost four months after the USCIS denied the petition and two months after Margarito paid him the $1,000. The outcome of that motion (or when it was decided) is not evident from the record.

Shortly after Mella agreed to file a motion to reopen, the DHS began removal proceedings against the Contrerases, charging them with being present unlawfully in the United States. *See* 8 U.S.C. § 1182(a)(6)(A)(i). Mella agreed — for another $5,500 — to represent them at the removal proceedings. He delegated that representation, however, to

5

others in his office. This delegation was, according to the Contrerases, contrary to Mella's agreement to appear personally in immigration court.

To make matters worse, the attorney Mella sent to the first removal hearing "might not [have been] fully aware of the immigration laws," as the Immigration Judge ("IJ") later explained charitably.[1] Counsel acknowledged the denial of Margarito's visa petition and suggested that a timely appeal had been filed even though it had not. After further questioning, however, the IJ sensed that even if the Contrerases had filed an appeal, it might not have been timely. Thinking her clients had no other options, counsel informed the IJ that her clients would be applying for voluntary departure. The IJ thought the Contrerases would be "shocked and confused" if she entered an order for voluntary departure, so she continued the case for a second time to allow counsel to prepare. The IJ noted that she would "probably not" continue the case again unless the DHS agreed or the Contrerases could show that a timely appeal of the denied employment-based visa petition had been filed.

At the next (and final) hearing in April 2008, yet another attorney from Mella's firm represented the Contrerases. This new attorney indicated that the sole relief sought was voluntary departure, which the IJ granted. One

---

[1] Among other shortcomings, counsel did not seem to grasp basic immigration law concepts. For example, she did not know what a priority date is. Margarito's priority date is the date the DOL accepted his labor certification application for processing: April 27, 2001. *See* 8 C.F.R. § 204.5(d). Counsel thought the priority date here was the date Margarito entered the United States.

6

day before their period of voluntary departure expired, the Contrerases — through their current counsel — filed a motion to reopen due to prior ineffective assistance of counsel. The IJ denied that motion.[2]

On appeal, the Board of Immigration Appeals ("BIA") upheld the IJ's decision. The Contrerases argued that prior counsel was ineffective for: (1) filing a labor certification application with the DOL despite knowing that Margarito's employer could not pay the offered wage; (2) failing to file a timely motion to reconsider the denied visa petition with the DHS; (3) misleading the IJ by claiming that an appeal of the denied visa petition had been filed with the DHS; and (4) failing to request a continuance (rather than voluntary departure) so that Margarito's employer could have filed a new labor certification application and visa petition. The BIA concluded that the Contrerases failed to "show that the hearing before the [IJ] was unfair or that, due to any alleged ineffective assistance of counsel *during the course of the removal proceedings*, they were prevented from reasonably presenting their case." (Emphasis added.) The BIA further explained that

> [the Contrerases' primary] arguments of ineffective assistance of counsel center on [Margarito's] pursuit of his application for adjustment of status by way of an employment-based visa petition, difficulties over which we

---

[2] The Contrerases claim that the IJ denied their motion to reopen "based solely on the condition of her docket." Pet'rs' Br. 21. The record reveals otherwise. The IJ denied the motion, among other reasons, because the Contrerases failed to show that their prior counsel was ineffective or that they were eligible for adjustment of status.

7

have no jurisdiction. The alleged ineffective assistance involved counsel who represented [the Contrerases] before the DHS, counsel who had been retained several years *before* these administrative proceeding were initiated . . . .

(Emphasis in original.) Finally, the BIA concluded that the IJ's factual findings were not clearly erroneous and that she had not erred in concluding that the Contrerases "did not receive ineffective assistance from [their] former attorney during the course of the removal proceedings."

The Contrerases then filed a timely petition for review. The BIA had jurisdiction under 8 C.F.R. §§ 1003.1(b)(3) and 1240.15. We have jurisdiction under 8 U.S.C. § 1252.

## II. Standard of Review

When, as here, the BIA affirms an IJ's decision and adds analysis of its own, we review both the IJ's and the BIA's decisions. *Dia v. Ashcroft*, 353 F.3d 228, 243 (3d Cir. 2003) (*en banc*); *Abdulai v. Ashcroft*, 239 F.3d 542, 549 (3d Cir. 2001). We review the denial of a motion to reopen for abuse of discretion and may reverse only if the denial is arbitrary, irrational, or contrary to law. *Shardar v. Att'y Gen.*, 503 F.3d 308, 311-12 (3d Cir. 2007). We review *de novo* questions of law, such as whether petitioners' due process rights to the effective assistance of counsel have been violated. *Fadiga v. Att'y Gen.*, 488 F.3d 142, 153-54 (3d Cir. 2007).

## III. Discussion

The Contrerases argue that their prior counsel rendered ineffective assistance both before and during their removal proceedings and that this ineffectiveness warrants reopening

8

the proceedings. As noted, counsel was allegedly ineffective before the removal proceedings for (1) filing a labor certification application with the DOL despite knowing that Margarito's employer could not pay the proffered wage and (2) failing to file a timely motion to reconsider the denied visa petition with the DHS. The Contrerases also claim that their counsel was ineffective during the removal proceedings for (1) misleading the IJ by claiming that an appeal of the denied visa petition had been filed with the DHS and (2) failing to request a continuance (rather than voluntary departure) so that Margarito's employer could have filed a new labor certification application and visa petition. We consider the allegations based on pre-proceeding attorney conduct first and then turn to the allegations of ineffectiveness during the removal proceedings themselves.

### A. *Claims of Ineffectiveness Before Removal Proceedings*

Because immigration proceedings are civil rather than criminal in nature, the Sixth Amendment right to the effective assistance of counsel does not apply. *Fadiga*, 488 F.3d at 157 n.23. But we have recognized (along with a majority of our sister Courts of Appeals) that "[a] claim of ineffective assistance of counsel in removal proceedings is cognizable under the Fifth Amendment — *i.e.*, as a violation of that amendment's guarantee of due process." *Id.* at 155; *see also Zheng v. Gonzales*, 422 F.3d 98, 106 (3d Cir. 2005); *Xu Yong Lu v. Ashcroft*, 259 F.3d 127, 131-32 (3d Cir. 2001).[3] To

---

[3] Like our Court, the First, Second, Sixth, Ninth, Tenth, and Eleventh Circuits have held that the Due Process Clause guarantees an alien a right to assistance of counsel that is sufficiently effective to prevent removal proceedings from being fundamentally unfair. *See Zeru v. Gonzales*, 503 F.3d

violate due process, an attorney's ineffectiveness must be so severe as to undermine the fundamental fairness of the removal proceeding. *See Fadiga*, 488 F.3d at 155 ("[W]here counsel does appear for the [alien], incompetence in some situations may make the proceeding *fundamentally unfair* and give rise to a Fifth Amendment due process objection.") (emphasis in original) (quoting *Hernandez v. Reno*, 238 F.3d 50, 55 (1st Cir. 2001)).[4]

---

59, 72 (1st Cir. 2007); *United States v. Perez*, 330 F.3d 97, 101 (2d Cir. 2003); *Denko v. INS*, 351 F.3d 717, 723-24 (6th Cir. 2003); *Nehad v. Mukasey*, 535 F.3d 962, 967 (9th Cir. 2008); *Tang v. Ashcroft*, 354 F.3d 1192, 1196 (10th Cir. 2003); *Dakane v. Att'y Gen.*, 399 F.3d 1269, 1273-74 (11th Cir. 2005). The Fourth and Eighth Circuits have held that there is no such constitutional right. *See Afanwi v. Holder*, 526 F.3d 788, 798 (4th Cir. 2008), *cert. granted, vacated, & remanded by* 130 S. Ct. 350 (Mem.) (2009); *Rafiyev v. Mukasey*, 536 F.3d 853, 861 (8th Cir. 2008). Panels of the Seventh Circuit have issued conflicting decisions on the matter. *Compare Castaneda-Suarez v. INS*, 993 F.2d 142, 144 (7th Cir. 1993) (recognizing due process right) *with Magala v. Gonzales,* 434 F.3d 523, 525 (7th Cir. 2005) (denying due process right). The Fifth Circuit has "repeatedly assumed without deciding that an alien's claim of ineffective assistance may implicate due process concerns under the Fifth Amendment." *Mai v. Gonzales*, 473 F.3d 162, 165 (5th Cir. 2006).

[4] We have identified three requirements of due process in removal proceedings: "An alien: (1) is entitled to factfinding based on a record produced before the decisionmaker and disclosed to him or her; (2) must be allowed to make

10

To make out an ineffective-assistance-of-counsel claim, an alien must show that prior counsel's deficient performance prevented him from reasonably presenting his case and caused him "substantial prejudice." *Fadiga*, 488 F.3d at 155; *Khan v. Att'y Gen.*, 448 F.3d 226, 236 (3d Cir. 2006); *Uspango v. Ashcroft*, 289 F.3d 226, 231 (3d Cir. 2002). To evaluate the merits of an ineffectiveness claim, we apply the familiar two-part error-and-prejudice test. *Fadiga*, 488 F.3d at 157. First, we ask whether "competent counsel would have acted otherwise." *Id.* (quoting *Iavorski v. INS*, 232 F.3d 124, 129 (2d Cir. 2000)). If so, we ask whether counsel's poor performance prejudiced the alien. *Id.* To prove prejudice, an alien must show that there is a "reasonable likelihood" that the result of the removal proceedings would have been different had the error(s) not occurred. *Id.* at 159. This standard "properly requires the alien to show not just that he received ineffective assistance in his removal proceedings, but that the challenged order of removal is fundamentally unfair, because there is a significant likelihood that the IJ would not have entered an order of removal absent counsel's errors." *Id.*[5]

---

arguments on his or her own behalf; and (3) has the right to an individualized determination of his or her interests." *Abdulai*, 239 F.3d at 549 (internal citations and quotation marks omitted).

[5] In addition to these substantive requirements, the BIA has three procedural requirements for motions to reopen based on ineffectiveness claims (the so-called "*Lozada* requirements"): (1) the alien's motion must be supported by an "affidavit of the allegedly aggrieved [alien] attesting to the relevant facts"; (2) "former counsel must be informed of the allegations and allowed the opportunity to respond," and this response should

11

In *Balam-Chuc v. Mukasey*, the Court of Appeals for the Ninth Circuit considered the primary issue we must now address: whether an alien's right under the Fifth Amendment to the effective assistance of counsel during removal proceedings extends to pre-proceeding attorney conduct in connection with the visa petition process. 547 F.3d 1044, 1050-51 (9th Cir. 2008). In that case, the Court acknowledged that poor representation during that process can result in terrible consequences for an alien and his family. Nonetheless, it held that "the Fifth Amendment simply does not apply to the preparation and filing of a petition that does not relate to the fundamental fairness of an ongoing [removal] proceeding." *Id.* at 1051; *see also Lara-Torres v. Ashcroft*, 383 F.3d 968, 973 (9th Cir. 2004) (noting that "unfortunate immigration-law advice" prior to a removal proceeding does not taint the fairness of the removal hearing itself in violation of the Fifth Amendment), *amended by* 404 F.3d 1105 (9th Cir. 2005).

Balam-Chuc, like the Contrerases, sought lawful permanent residency under 8 U.S.C. § 1255(i) . He argued that his attorney failed to file properly his visa petition before § 1255(i)'s April 30, 2001 deadline, and that this failure deprived him of due process. 547 F.3d at 1050. The Court

be submitted with the motion; and (3) "if it is asserted that prior counsel's handling of the case involved a violation of ethical or legal responsibilities, the motion should reflect whether a complaint has been filed with appropriate disciplinary authorities regarding such representation, and if not, why not." *See Matter of Lozada*, 19 I. & N. Dec. 637, 639 (BIA 1988). The Government concedes that the Contrerases' compliance with the *Lozada* requirements is not at issue. *See* Gov. Br. 19 n.5.

noted that this deficiency did "not relate to the substance of an ongoing hearing; in fact, no proceedings had begun at the time the alleged attorney misconduct took place." *Id.* It rejected Balam-Chuc's attempt "to cast . . . an expansive and amorphous Fifth Amendment due process right that encompasses legal assistance removed from the actual [removal] process itself." *Id.* at 1051 (quoting *Lara-Torres*, 383 F.3d at 975).

The Contrerases have offered no authority to the contrary, nor have we found any. They merely claim that the BIA "erred as a matter of law when it arbitrarily added an additional requirement" not found in its prior decision in *Lozada* or our decision in *Fadiga*. Pet'rs' Br. 19. Those cases, however, did not address alleged ineffectiveness before removal proceedings begin.

The Fifth Amendment right to effective counsel in removal proceedings is narrower than the Sixth Amendment right to effective counsel in criminal proceedings. As we have recognized, the process that is "due" an individual facing removal is the process of a fundamentally fair hearing. *See Fadiga*, 488 F.3d at 155, 159; *Xu Yong Lu*, 259 F.3d at 13; *see also Hernandez*, 238 F.3d at 55; *Castaneda-Suarez*, 993 F.2d at 144. To be sure, had prior counsel timely appealed or sought reconsideration of Margarito's visa petition denial, then the IJ may have been willing, in an exercise of her discretion, to continue the removal proceedings. But while counsel's inept conduct prior to the removal proceedings may have resulted poorly for the Contrerases, it did not compromise the fundamental fairness of the removal proceedings themselves. The Contrerases were still able to present arguments and evidence available to them at the time of the proceedings. Unfortunately, they had

no arguments or evidence that would have provided relief from removal.[6]

We cannot end our discussion on this point without further comment on Mella's representation before the start of the removal proceedings, even if it is not subject to due process scrutiny. Our review of the administrative record reveals instances of not only incompetence but also exploitation. For example, Mella required $1,000 from

[6] In limited circumstances, the BIA is authorized to consider ineffective assistance claims involving attorney malfeasance that occurs outside the context of removal proceedings. For example, in assessing whether an alien has established extraordinary circumstances that would excuse the untimely filing of an asylum application under 8 U.S.C. § 1158(a)(2)(D), an IJ (and the BIA) are authorized by regulation to determine whether the alien's asylum application was untimely due to ineffective assistance of counsel. *See* 8 C.F.R. § 1208.4(a)(5)(iii). Because an alien may affirmatively file an application for asylum prior to removal proceedings, *see* 8 C.F.R. §§ 103.2(a)(7), 208.2, attorney malfeasance for failing to file timely may occur before removal proceedings actually begin. Furthermore, the Attorney General has authorized the BIA, as an exercise of its discretion to reopen removal proceedings, to consider ineffective assistance claims that arise after removal proceedings have been completed. *See Matter of Compean*, 25 I. & N. Dec. 1, 1-3 (Att'y Gen. 2009). But the Contrerases have not identified any statutory provision, regulation, or case law that supports the proposition that an IJ or the BIA is similarly required to review an ineffective assistance claim that arises in the context of collateral matters, such as the denial of a visa petition.

14

Margarito — two weeks' pay according to his pay stubs at the time — to file a motion to reconsider that Mella knew or should have known would be untimely. As noted, when he met with the Contrerases in January 2008, both the 33-day window to appeal the visa petition and the 30-day window to file a motion to reconsider had closed. With no time left on the clock to challenge the visa petition denial, but with the Contrerases' money in hand, Mella sent himself on a fool's errand, what his office readily admits was a "last-ditch effort."

Furthermore, we are incredulous that Mella promptly and effectively discussed with the Contrerases and Margarito's employer the possibility of appealing the denied visa petition. Margarito's employer's claims that she has "always been willing to sponsor Margarito Contreras." But, according to a letter from his office, Mella did not appeal the visa petition because Margarito's employer "pulled out" in December 2007 and therefore he had "no ability to challenge assertions in the denial on appeal." Admittedly, only a petitioner (Margarito's employer) may appeal the denial of an employment-based visa petition on behalf of the petition's beneficiary (Margarito). *See* 8 C.F.R. § 103.3(a)(1)(iii)(B) (defining an "affected party" as the "person or entity with legal standing in a proceeding" and excluding from this definition the "beneficiary of a visa petition"); *id.* at § 103.3(a)(2)(i) (providing that an "affected party" may appeal the denial of a visa petition); *id.* at § 103.3(a)(2)(v)(A)(1) (requiring rejection of an appeal filed by a person not entitled to file such an appeal). But employer support is also necessary to file a motion to reopen or a motion to reconsider. *See* 8 C.F.R. § 103.5(a)(1) (allowing only an "affected party" to seek reopening or reconsideration of a denied visa petition). The supposed lack of necessary employer support that stopped Mella from appealing the visa petition denial in December 2007 did not stop him from filing the motion to

15

reconsider in March 2008. Simply put, Mella's filing the motion belies his excuse for not filing an appeal.

The Contrerases deserved better. Mella's representation during the visa petition process fell well short of the decency and professionalism we expect from the immigration bar. Navigating the legal complexities and administrative quagmires of our immigration system is difficult enough even with the benefit of the most zealous advocacy. As this case painfully demonstrates, attorney incompetence — whether the result of carelessness or dishonesty — can make those difficulties insurmountable. Regrettably, however, because counsel's substandard performance occurred before the removal proceedings were instituted, we are unable to provide a remedy.

### B. Claims of Ineffectiveness During Removal Proceedings

Turning to the Contrerases' allegations of their former counsel's deficiency during the removal proceedings themselves, we hold that the BIA did not abuse its discretion in finding that they did not receive ineffective assistance of counsel.

First, the record does not show that prior counsel attempted to mislead the IJ into believing that an appeal of the denied visa petition had been timely filed, or that such an attempt caused the Contrerases any prejudice. At the first removal hearing, counsel (whom the IJ found to be woefully unfamiliar with the Contrerases' case) incorrectly stated that a timely appeal of the denied visa petition had been filed. But when questioned further about the timing, counsel conceded that she had been mistaken. The IJ was not misled, as her decision denying the Contrerases' motion to reopen noted that

16

counsel was unable to establish that any appeal was timely filed.

Second, competent counsel would not have requested a third continuance to file a new labor certification application because, based on the IJ's previous comments, such a request would have been futile. Having already granted two continuances, the IJ stated on the record that — absent evidence of a timely filed appeal of the visa petition, an agreement with the DHS, or some other convincing reason — she would not grant a further continuance. In addition, the IJ also observed that she would not likely have granted a continuance to allow Margarito the opportunity to file yet another labor certification application due to the processing times needed for such applications. Based on these statements, prior counsel seems to have acted reasonably during the removal proceedings by requesting the only form of relief available to the Contrerases at that point — voluntary departure.

Our decision in *Khan v. Attorney General* also suggests that the IJ's stated reasons for her refusal to grant any further continuances were reasonable. 448 F.3d at 233-36. If "an alien has failed to submit a visa petition, an IJ's decision to deny the alien's continuance request is squarely within the IJ's broad discretion, at least absent extraordinary circumstances . . . ." *Id.* at 234. An IJ has no obligation to grant a continuance that would be essentially "indefinite" if there is "only the speculative possibility that at some point in the future" the alien's labor certification application will be approved. *Id.* at 235 (internal quotation marks omitted).[7] At

---

[7]After the Contrerases' removal proceedings, the BIA decided *Matter of Rajah*, which clarified the factors an IJ should consider when determining whether good cause exists to

the time of the removal proceedings, the possibility of Margarito obtaining an approved visa petition was speculative. His employer had not even submitted a new labor certification application. The speculative possibility that the Contrerases might have become eligible for relief from removal, especially in light of our decision in *Khan*, further suggests a request for a third continuance would have been futile and that competent counsel would not have sought such a continuance.

Finally, contrary to the Contrerases' suggestion, it is not reasonably likely that if prior counsel had requested a continuance (rather than voluntary departure), they would have been spared the imminent threat of the ten-year bar of inadmissibility. *See* 8 U.S.C. § 1182(a)(9)(B)(i)(II) ("An alien (other than an alien lawfully admitted for permanent residence) who . . . has been unlawfully present in the United States for one year or more, and who again seeks admission within 10 years of the date of such alien's departure or removal from the United States, is inadmissible."). Margarito and Norma, having entered the United States unlawfully in 1993 and 1998, respectively, acquired more than one year of unlawful presence well before they were even placed in removal proceedings. As discussed above, any motion for a continuance appeared futile. If prior counsel had not

continue removal proceedings to await the deciding of a pending employment-based visa petition or labor certification. 25 I. & N. Dec. 127 (BIA 2009). Importantly, the BIA held that "pendency of a labor certification [application] generally would not be sufficient to grant a continuance in the absence of additional persuasive factors, such as the demonstrated likelihood of its imminent adjudication or DHS support for the motion." *Id.* at 137.

requested voluntary departure, then the IJ would likely have ordered the Contrerases' removed involuntarily because they did not, and still do not, have an approved visa petition making them eligible for relief from removal. Thus, the Contrerases' unlawful presence for more than one year and their ineligibility for any relief, not any ineffectiveness of counsel, triggered the impending ten-year bar of inadmissibility.

\* \* \* \* \*

For these reasons, we deny the petition for review.