**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-3137
_____

DEXTER PANTLITZ-WILKINSON,
                                             Petitioner

v.

ATTORNEY GENERAL OF THE
UNITED STATES OF AMERICA,
                                             Respondent
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A042-972-759)
Immigration Judge:  Honorable Leo A. Finston
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 20, 2014
Before: RENDELL, GREENAWAY, JR. and SCIRICA, Circuit Judges

(Filed: February 10, 2015)
_____

OPINION[*]
_____

PER CURIAM

Dexter Pantlitz-Wilkinson petitions for review of the Board of Immigration

_____
[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Appeals' ("BIA") final order of removal.  We will deny the petition.

## I.

Pantlitz-Wilkinson was born in Guyana to citizens of Guyana but claims to have derived United States citizenship when his father and stepmother later naturalized. He entered the United States in 1991 when he was fifteen years old and later became a lawful permanent resident.  In 2009, he pleaded guilty to conspiring in violation of N.J. Stat. Ann. § 2C:5-2 to possess with the intent to distribute controlled substances in violation of N.J. Stat. Ann. § 2C:35-5(a)(1).  On the basis of that conviction, the Government charged him as removable for being convicted of (1) a controlled substance violation, see 8 U.S.C. § 1227(a)(2)(B)(i), and (2) illicit-trafficking and conspiracy aggravated felonies, see 8 U.S.C. §§ 1101(a)(43)(B) & (U), 1227(a)(2)(A)(iii).

Pantlitz-Wilkinson initially appeared before the Immigration Judge ("IJ") pro se, but he later obtained counsel and the IJ granted him multiple continuances to investigate his claim to citizenship and apply for any relief for which he might be eligible.  Pantlitz-Wilkinson, through counsel, ultimately conceded all charges of removability, declined to apply for any relief from removal, and argued only that he is a United States citizen.  He filed a motion to terminate the removal proceeding on that basis, but the IJ denied it and ordered Pantlitz-Wilkinson's removal to Guyana.  Pantlitz-Wilkinson appealed pro se and argued, in addition to his citizenship claim, that his conviction does not render him removable and that his counsel rendered ineffective assistance by conceding otherwise.

2

The BIA dismissed his appeal on the merits, and he petitions for review pro se.[1]

## II.

### A. Citizenship

Pantlitz-Wilkinson's primary argument throughout this proceeding has been that he is a citizen of the United States. Pantlitz-Wilkinson concedes that he was not born in the United States, and he thus bears the burden to prove his eligibility for citizenship. See Bagot v. Ashcroft, 398 F.3d 252, 256 (3d Cir. 2005). "[P]ersons born outside of the United States may acquire United States citizenship only as provided by acts of Congress[.]" Morgan v. Att'y Gen., 432 F.3d 226, 230 (3d Cir. 2005) (quotation marks omitted). Pantlitz-Wilkinson claims that he derived citizenship from his stepmother when she naturalized in 1989, when he was thirteen years old, and from his father when he naturalized in 1994, approximately five months after Pantlitz-Wilkinson turned eighteen. He raises essentially two arguments in that regard, but they lack merit.

First, Pantlitz-Wilkinson relies on INA § 301(g), 8 U.S.C. § 1401(g).[2] Under that

---

[1] We have jurisdiction under 8 U.S.C. § 1252(a)(1), but, because the Agency found that Pantlitz-Wilkinson is a criminal alien, our jurisdiction is limited to constitutional claims and questions of law. See 8 U.S.C. § 1252(a)(2)(C), (D). Pantlitz-Wilkinson's claim to derivative citizenship is not based on any disputed facts, and we exercise plenary review over that purely legal issue. See Brandao v. Att'y Gen., 654 F.3d 427, 428 (3d Cir. 2011). In doing so, we do not defer under Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984), to the BIA's single-member, non-precedential decision in this case. See Mahn v. Att'y Gen., — F.3d —, No. 12-4377, 2014 WL 4627976, at *2 (3d Cir. Sept. 17, 2014). We review claims of ineffective assistance de novo. See Contreras v. Att'y Gen., 665 F.3d 578, 583 (3d Cir. 2012).

[2] This statute was codified at 8 U.S.C. § 1401(a)(7) at the time of Pantlitz-Wilkinson's

statute, a person becomes a United States citizen "at birth" if the person is "born outside the geographical limits of the United States" and one of the person's parents was a United States citizen at that time and satisfied certain residency requirements. Id. (emphasis added). Pantlitz-Wilkinson argues that this statute applies to him because, under the reasoning in Solis-Espinoza v. Gonzales, 401 F.3d 1090 (9th Cir. 2005), his stepmother should be deemed his "parent" for purposes of this statute. As the BIA explained, however, this statute would not apply to Pantlitz-Wilkinson even if she were because his stepmother was not a United States citizen when he was born and did not become a citizen until 1989 when he was thirteen years old. The Ninth Circuit itself has distinguished Solis-Espinoza and refused to extend it to Pantlitz-Wilkinson's situation for that reason. See Ragasa, 752 F.3d at 1175.

Second, Pantlitz-Wilkinson relies on the provisions governing children born abroad to later-naturalized parents—former INA § 321(a)(4), 8 U.S.C. § 1432(a), and current INA § 320, 8 U.S.C. § 1431. Pantlitz-Wilkinson purports to rely on both statutes, but his claim is governed by former INA § 321(a), 8 U.S.C. § 1432(a), because that was the statute in effect at all relevant times. See Morgan, 432 F.3d at 230.[3] This statute

_____

birth but was later redesignated without substantive change as 8 U.S.C. § 1401(g). See Ragasa v. Holder, 752 F.3d 1173, 1175 n.2 (9th Cir. 2014).

[3] Current INA § 320, 8 U.S.C. § 1431, repealed and replaced former INA § 321(a)(4), 8 U.S.C. § 1432(a), when it was enacted in 2000 as part of the Child Citizenship Act. See Morgan, 432 F.3d at 230 n.1; Bagot, 398 F.3d at 257 & n.3. The current statute "does not apply retroactively to persons . . . who turned eighteen before" its enactment. Morgan, 432 F.3d at 230 n.1. Pantlitz-Wilkinson turned eighteen in 1994.

4

confers citizenship on a child upon "[t]he naturalization of <u>both parents</u>," INA § 321(a)(1), 8 U.S.C. § 1432(a)(1) (emphasis added), if, among other things, "[s]uch naturalization takes place while such child is under the age of eighteen years," INA § 321(a)(4), 8 U.S.C. § 1432(a)(4). The BIA concluded that Pantlitz-Wilkinson could not derive citizenship under this provision because, inter alia, it requires the naturalization of <u>both</u> parents before the child turns eighteen and Pantlitz-Wilkinson's father did not naturalize until thereafter. We agree.

Naturalization is defined as "the conferring of nationality of a state upon a person," not as a person's application for naturalization. 8 U.S.C. § 1101(a)(23); <u>see also</u> <u>Poole v. Mukasey</u>, 522 F.3d 259, 265 (2d Cir. 2008) (noting that the § 1432(a)(4) "inquiry focuses on whether [the petitioner's parent] <u>received her citizenship</u> prior to [the petitioner's] eighteenth birthday") (emphasis added). In this case, Pantlitz-Wilkinson's father applied for naturalization in February 1994, approximately two months before Pantlitz-Wilkinson turned eighteen in April 1994, but the Government did not grant the application until September 1994, approximately five months thereafter. Thus, under the plain language of the statute, Pantlitz-Wilkinson did not derive citizenship when his father naturalized.

Pantlitz-Wilkinson nevertheless argues that the Government's two-month "delay" in processing his father's application should not be held against him. He relies on <u>Calix-Chavarria v. Attorney General</u>, 182 F. App'x 72 (3d Cir. 2006) (per curiam), in which a Panel of this Court remanded for further consideration of an identical argument. But in

5

addition to that opinion being non-precedential, see 3d Cir. I.O.P. 5.7, the full history of that case shows why Pantlitz-Wilkinson's argument lacks merit.

In Calix-Chavarria, the petitioner claimed derivative citizenship under this statute on the basis of his mother's naturalization even though the Government granted her application after he turned eighteen. See id. at 75. The petitioner argued that his mother submitted her naturalization application over two years before he turned eighteen and that the Government's delay in adjudicating it should not be held against him. See id. The Panel too was concerned about that delay, and it remanded for the BIA to consider whether the policies underlying the Child Status Protection Act of 2002 ("CSPA") could be applied to the statute at issue here. See id. at 76.[4]

On remand, the BIA concluded that the policies underlying the CSPA cannot override the plain language of the statute and again rejected the petitioner's claim. Another Panel of this Court denied the petitioner's second petition for review. See Chavarria-Calix v. Att'y Gen., 510 F. App'x 130 (3d Cir. 2013). The Panel concluded that, despite the Government's over two-year delay in adjudicating the naturalization application, the petitioner failed to satisfy the statutory requirement that his mother actually receive citizenship before he turned eighteen and this Court lacks the authority to

---

[4] The CSPA provides "age-out" protection for aliens who were children at the time an application for permanent residency was filed on their behalf but, as the Panel recognized, that statute does not apply to citizenship claims. See Calix-Chavarria, 182 F. App'x at 75; see also Scialabba v. Osorio, 134 S. Ct. 2191, 2199-2200 (2014) (noting that Congress enacted the CSPA to provide "age-out" protection for the beneficiaries of family-sponsored visa petitions).

make equitable exceptions to that statutory requirement. See id. at 133-34 (citing INS v. Pangilinan, 486 U.S. 875, 883-85 (1988)). The Panel also concluded that, even if it had the authority, the petitioner had not shown affirmative misconduct on the part of the Government or any other circumstance warranting such relief. See id. at 134.[5]

The same is true here. Because Pantlitz-Wilkinson's father did not naturalize until after Pantlitz-Wilkinson turned eighteen, Pantlitz-Wilkinson did not derive citizenship from his father under the plain limitations of former INA § 321(a), 8 U.S.C. § 1432(a), and "[n]either by application of the doctrine of estoppel, nor by invocation of equitable powers, nor by any other means does a court have the power to confer citizenship in violation of these limitations." Pangilinan, 486 U.S. at 885.

Nor has Pantlitz-Wilkinson provided any basis to exercise that authority even if we could. See Cheruku v. Att'y Gen., 662 F.3d 198, 207-09 (3d Cir. 2011) (addressing the limited circumstances warranting equitable estoppel or nunc pro tunc relief in other contexts). Pantlitz-Wilkinson seeks relief solely on the basis of what he characterizes as an "inexplicable delay" in adjudicating his father's naturalization application, but the "delay" between the filing of that application and Pantlitz-Wilkinson's eighteenth birthday was only approximately two months in this case (as opposed to the over two-

---

[5] The Second Circuit followed Calix-Chavarria in remanding a similar citizenship claim for a similar reason in Poole, 522 F.3d 259, but, like this Court, it ultimately denied the petition for review after the BIA again rejected the petitioner's claim. See Poole v. Holder, 363 F. App'x 82, 83-84 (2d Cir. 2010).

year delay that troubled the Panel in <u>Calix-Chavarria</u>).  It is hardly inexplicable that it might take the Government more than two months to process a naturalization application.  <u>Cf.</u> <u>Scialabba</u>, 134 S. Ct. at 2199 (noting that "many months may go by before [the Government] approves the initial [family visa] petition").

B.    Pantlitz-Wilkinson's Remaining Arguments

Pantlitz-Wilkinson also argues that his New Jersey conviction does not render him removable and that his counsel rendered ineffective assistance by conceding that it does.  The BIA did not reach the first of these arguments because it concluded that (1) Pantlitz-Wilkinson did not support his claim of ineffective assistance as required by <u>In re Lozada</u>, 19 I. & N. Dec. 637 (BIA 1988), and (2) the IJ was otherwise justified in relying on counsel's concession of the charges.  We see no basis to disturb either ruling.

First, <u>Lozada</u> sets forth three procedural requirements for asserting a claim of ineffective assistance.  <u>See</u> <u>Contreras v. Att'y Gen.</u>, 665 F.3d 578, 585 n.5 (3d Cir. 2012).[6]  We do not apply "a strict, formulaic interpretation of <u>Lozada</u>," but we have upheld its requirements as a reasonable exercise of the BIA's discretion.  <u>Lu v. Ashcroft</u>, 259 F.3d 127, 133 (3d Cir. 2001).  In this case, Pantlitz-Wilkinson did not submit the

---

[6] These requirements are that the alien:  (1) support the claim with an affidavit attesting to the relevant facts; (2) inform former counsel of the allegations and permit former counsel an opportunity to respond; and (3) indicate whether the alien has filed a disciplinary complaint and, if not, explain why.  <u>See</u> <u>Contreras</u>, 665 F.3d at 585 n.5.  Although our decisions most frequently address these requirements in the context of motions to reopen, the BIA could have construed Pantlitz-Wilkinson's brief as such a motion if he had properly supported this claim, and the same considerations govern on appeal.  <u>See</u> <u>Garcia-Martinez v. DHS</u>, 448 F.3d 511, 514 (2d Cir. 2006).

documents or information required by Lozada to the BIA with his brief or any other filing. To the contrary, his only mentions of Lozada were his assertions in his brief that "the requirements of Lozada are not dispositive" and that a "previous filing"—which he neither identified nor attached—satisfied those requirements. (A.R. 13-14.) We cannot fault the BIA's reliance on Lozada in light of what Pantlitz-Wilkinson presented to it.[7] Moreover, even if Pantlitz-Wilkinson had satisfied the Lozada requirements, and as discussed at the close of this opinion, Pantlitz-Wilkinson has not asserted a valid claim of ineffective assistance because he has not shown prejudice. See Contreras, 665 F.3d at 584-85.

Second, the BIA did not err in concluding that the IJ otherwise reasonably relied on counsel's concession of removability. In doing so, the BIA cited 8 C.F.R. § 1240.10(c), which expressly permits IJs to rely on admissions of removability. See also Shin v. Mukasey, 547 F.3d 1019, 1024 (9th Cir. 2008) ("[W]here the alien concedes removability, the government's burden [to prove it] is satisfied.") (quotation marks omitted). The BIA also cited In re Velasquez, 19 I. & N. Dec. 377, 382 (1986), which recognizes that aliens generally are bound by the admissions of their counsel. We too

---

[7] In addition to his brief, Pantlitz-Wilkinson filed with the BIA a notice of appeal (A.R. 62-69) and a motion for an extension of time to file his brief (A.R. 55-56). Neither of these filings nor any other document in the administrative record mentions Lozada or indicates any attempt to comply with its requirements. Pantlitz-Wilkinson has attached various documents evidencing an attempt to comply with Lozada to his petition for review and his brief in this Court, but we must "decide the petition only on the administrative record on which the order of removal is based." 8 U.S.C. § 1252(b)(4)(A).

have recognized that "[a]n alien is generally bound by the actions of his attorney," Calla-Collado v. Att'y Gen., 663 F.3d 680, 683 (3d Cir. 2011) (per curiam), as have other courts in similar situations, see, e.g., Hoodho v. Holder, 558 F.3d 184, 191-92 (2d Cir. 2009).

Pantlitz-Wilkinson has raised nothing suggesting that this general principle should not apply here. He argues that he contested the allegations and charges against him while he was still proceeding pro se, but the only specific allegation he contested was an allegation regarding a weapons conspiracy that did not form the basis for his charges of removability. (A.R. 84.) Then, after Pantlitz-Wilkinson obtained counsel, counsel expressly conceded both the factual allegations and the charges of removability contained in the Notice to Appear. (A.R. 103.) And after that concession, although Pantlitz-Wilkinson was represented at times by different members of the same law firm, he never protested the concession before the IJ and instead answered "yes" when the IJ asked him if counsel was authorized to speak for him. (A.R. 107-08, 115.)

Pantlitz-Wilkinson also argues that there is insufficient evidence in the record to sustain the charges of removability. "Admissions by parties," however, "are not subject to judicial scrutiny to ensure that the admissions are fully supported by the underlying record." Hoodho, 558 F.3d at 191. "Where, as here, the record evidence does not plainly contradict the concession of an attorney, we see no basis to second guess the decision of an IJ to accept that concession and conduct removal proceedings accordingly." Id. at 187.

10

The record in this case does not "plainly contradict" counsel's concession that Pantlitz-Wilkinson was convicted of a controlled substance violation. An alien is removable if he or she has been "convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation . . . relating to a controlled substance (as defined in section 802 of Title 21), other than a single offense involving possession for one's own use of 30 grams or less of marijuana." 8 U.S.C. § 1227(a)(2)(B)(i). Pantlitz-Wilkinson was convicted of conspiring to violate a statute that makes it illegal to "manufacture, distribute or dispense, or to possess or have under [one's] control with intent to manufacture, distribute or dispense, a controlled dangerous substance." N.J. Stat. Ann. § 2C:35-5(a)(1); (A.R. 136, 148).

Pantlitz-Wilkinson argues that the Government did not prove that he was convicted of a controlled substance violation because it did not establish the specific substance involved and thus did not establish that the substance was controlled under federal law. See Rojas v. Att'y Gen., 728 F.3d 203, 205 (3d Cir. 2013) (en banc). But Pantlitz-Wilkinson was charged with conspiring to possess with the intent to distribute cocaine, heroin, marijuana and methylenedioxa- and methylenedioxy-methamphetamine, commonly known as Ecstasy (A.R. 140-41), and all of those substances are controlled under federal law. See 21 U.S.C. § 812, sched. II(a)(4) (cocaine), sched. I(b)(10) (heroin), sched. I(c)(10) (marijuana), sched. I(c)(1)-(2) (Ecstasy). Moreover, Pantlitz-Wilkinson himself, before obtaining counsel, expressly admitted before the IJ that "I was convicted of, of the marijuana possession." (A.R. 84.) Thus, Pantlitz-Wilkinson cannot

11

be heard to complain that his counsel conceded this charge.[8]

Nor does the record "plainly contradict" counsel's concession of the aggravated felony charges. A conviction under N.J. Stat. Ann. § 2C:35-5(a)(1) does not categorically constitute an illicit trafficking aggravated felony under the hypothetical federal felony route, but only because the statute criminalizes the distribution of a small amount of marijuana for no remuneration, which is only a federal misdemeanor. See Wilson v. Ashcroft, 350 F.3d 377, 381-82 (3d Cir. 2003). As explained above, Pantlitz-Wilkinson was charged with possessing with the intent to distribute, not just marijuana, but cocaine, heroin and Ecstasy as well. Although Pantlitz-Wilkinson's judgment does not specify that he pleaded guilty to a conspiracy involving any of those substances, it does not establish that he did not. The record is instead at most inconclusive on that point, and an inconclusive record is not sufficient to override counsel's concession of removability. See Hoodho, 558 F.3d at 189-90.

For a similar reason, Pantlitz-Wilkinson cannot show that he was prejudiced by counsel's concession in the context of this proceeding—i.e., that "the challenged order of removal is fundamentally unfair, because there is a significant likelihood that the IJ would not have entered an order of removal absent counsel's [alleged] errors."

---

[8] Pantlitz-Wilkinson appears to invoke the exception for "possession for one's own use of 30 grams or less of marijuana," 8 U.S.C. § 1227(a)(2)(B)(i), but his statute of conviction prohibits possession with the intent to distribute and not simple possession. As part of Pantlitz-Wilkinson's guilty plea, a charge of simple possession of marijuana was dismissed. (A.R. 136.) For the same reason, Pantlitz-Wilkinson was not eligible for a waiver of inadmissibility under 8 U.S.C. § 1182(h).

<u>Contreras</u>, 665 F.3d at 584-85 (quotation marks omitted).  There is no question that Pantlitz-Wilkinson is removable for being convicted of a controlled substance violation.  Nor did Pantlitz-Wilkinson apply for any form of relief, let alone any form of relief for which he would have been eligible but for counsel's concessions.

Pantlitz-Wilkinson has never claimed that he faces persecution or torture in Guyana.  Thus, the only form of relief for which he conceivably might have been eligible would have been cancellation of removal under 8 U.S.C. § 1229b(a).  If he had applied for cancellation of removal, however, he would have borne the burden to prove his eligibility for that relief.  See <u>Syblis v. Att'y Gen.</u>, — F.3d —, No. 11-4478, 2014 WL 4056557, at *2 (3d Cir. Aug. 18, 2014).  That burden would have required him to prove, inter alia, that he has <u>not</u> been convicted of an aggravated felony.  See 8 U.S.C. § 1229b(a)(3).  An inconclusive criminal record that does not specify the substance involved in the offense is not sufficient to meet that burden.  See <u>Syblis</u>, 2014 WL 4056557, at *6.

### III.

For these reasons, we will deny the petition for review.

13